OPINION OF THE COURT
John A. Milano, J.
In this case the court is presented with a novel issue: Is a defendant’s insurance carrier bound to honor a settlement amount offered to and accepted by the plaintiff, when it is later discovered that said amount exceeds the limits of defendant’s policy? While the amount in contention herein is relatively small, the principle involved is wide-reaching in its impact. For the reasons stated below, this court holds that despite the fact that the underlying policy limit is $10,000 the defendant herein is bound to honor its previously tendered and accepted offer of $15,000.
Before proceeding to the legal merits of plaintiff’s claim a recitation of the facts is in order. Both sides agreed to submit their controversy on submitted facts which are as follows:
FACTS
The plaintiff, Rosemarie Mazzola, was involved in a motor vehicle accident on June 24, 1986, sustaining personal injury. Thereafter, Ms. Mazzola retained counsel to represent her in her personal injury lawsuit. During the pendency of her lawsuit, plaintiff’s counsel entered into settlement negotiations with CNA Insurance Company, the carrier for the other motor vehicle. The settlement negotiations took place over a period of time, from approximately December 1987 through May 2, 1988. The settlement negotiations were entered into with Mr. Sam Hawkins, senior claims representative of the CNA Insurance Company. During the period of negotiations, at one point, on December 21, 1987, Mr. Hawkins offered the sum of $12,500 to settle the lawsuit. Thereafter, Mr. Hawkins raised the offer to $15,000.
The offer of $15,000 was conveyed to the plaintiff, Ms. Mazzola, and she accepted the offer. She, thereafter, executed a general release releasing K. Hariprashad, CNA’s covered insured. This fully executed release, in the amount of $15,000 was forwarded to the CNA Insurance Company to the attention of Mr. Sam Hawkins on March 8,1988.
On May 2, 1988 a letter was forwarded to plaintiff’s counsel’s office from Mr. Hawkins of the CNA Insurance Company *899 confirming that he had offered the sum of $15,000 but that he would not be able to honor the offer of settlement since it exceeded his insured’s policy limits of $10,000 per person.
Thereafter, the instant lawsuit was commenced by the plaintiff against the CNA Insurance Company requesting damages in the sum of $15,000 for breach of contract.
LAW
While this factual history is brief and simple, the legal issues raised by it are fairly complex. Among the questions presented to the court are the following:
Is the settlement binding and effective even though not made in open court? Does the settlement constitute a contract? Can a party be excused from compliance with a contract based upon unilateral mistake? Can an agent bind the insurance company even though the offer is beyond policy limits? Is the plaintiff estopped from raising the policy limits at this time?
Indeed, the questions presented by the facts herein are longer than the facts themselves.
The first issue to be resolved is whether or not this stipulation of settlement may be enforced even though it was not made in open court. CPLR 2104 provides as follows: “An agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in a writing subscribed by him or his attorney”.
In this case the settlement was not in open court but was reduced to writing.
On May 2, 1988 the defendant sent a letter to plaintiff’s counsel confirming the fact that the case had been settled for $15,000.[1] Moreover, two months earlier, defendant had forwarded to the plaintiff a general release (for $15,000) which was duly executed by the plaintiff on March 4, 1988. Certainly the forwarding of this release, not to mention the subsequent letter of May 2, 1988, constitutes a “writing” sufficient to satisfy the formal requirements of CPLR 2104 (see, Home Ins. Co. v United Air Lines, 76 Misc 2d 799; Golden Arrow Films v Standard Club of Cal., 38 AD2d 813). Thus, it is clear to this court that the parties herein had reached an agreement *900 completely settling the underlying tort action and that said agreement is valid and enforceable under CPLR 2104.[2]
Having determined that the stipulation between the parties is valid, the question remains as to what are the consequences of said stipulation given that defendant’s policy limit is $5,000 less than the settled amount. "A stipulation is a contract between parties, and as such is governed by general principles for its interpretation and effect” (Nishman v De Marco, 76 AD2d 360, 366, citing Yonkers Fur Dressing Co. v Royal Ins. Co., 247 NY 435; Bond v Bond, 260 App Div 781, rearg denied 261 App Div 835; Keogh v Main, 20 Jones & Sp 160). Given that the settlement/stipulation herein created a contract between the parties, the plaintiff is entitled to enforce that contract unless the defendant can show some reason to void the contract. Defendant herein claims that the contract is voidable because it was entered into under a mistake of fact, i.e., that defendant’s insured’s policy covered him up to the $15,000 offer. It is clear that this mistake of fact was not mutual. Defendant concedes that at no point were the limits of the insured’s policy disclosed to plaintiff or her attorney.
Plaintiff had every reason to believe that the defendant’s insured’s policy was greater than $10,000, even before she accepted $15,000, since an offer of $12,500 was made after plaintiff had rejected a $10,000 offer. Moreover, the interim offer was conveyed by one of defendant’s senior claims representatives, an individual who should be acutely aware of the policy limits. Thus the court finds that this mistake of fact was unilateral in nature, having been made by defendant alone with no influence whatsoever from the plaintiff or her agent.
"A contract may be voided on the ground of a unilateral mistake of fact only where the enforcement of the contract would be unconscionable, the mistake is material and made despite the exercise of ordinary care by the party in error, the innocent party had no knowledge of the error, and it is possible to place the parties in status quo.” (21 NY Jur 2d, Contracts, § 121, at 529.) In the situation at bar, defendant cannot avail itself of these grounds. First, the enforcement of *901 this stipulation/contract cannot be deemed unconscionable. The plaintiff and the defendant in the underlying tort action were both represented by counsel, both dealt at arm’s length with equality of bargaining power and there is no evidence of overreaching by either side. Indeed, defendant in no way contends that the plaintiff knew of the policy limits and took advantage of defendant’s mistake regarding same. Unconscionability is contractual overreaching, imposition, oppressiveness, or unfairness (Hume v United States, 132 US 406 [1889]). None of these elements are present in the case at bar. The simple fact is that defendant mistook its own policy limits, but that beyond this mistake the settlement negotiations were fairly conducted in all respects and the settlement itself was "above board”.
Similarly, defendant cannot void this settlement claiming that this was a material mistake which could not have been discovered through the exercise of ordinary care. Even conceding that the mistake regarding policy limits is material it is almost unbelievable to this court that the correct extent of defendant’s insured’s policy limits were not known to the defendant’s agents throughout the course of the underlying proceeding. As noted above, negotiations were carried out with a senior claims representative of the defendant. Certainly such an individual should have been aware of the $10,000 limitation and certainly cannot now be heard to claim that he did not know of same or could not have readily discovered same. In the court’s opinion defendant has no basis whatsoever to claim that it could not have discovered the mistake.
Finally, even if the defendant were able to comply with the above criteria for voiding the settlement based upon unilateral mistake, its attempt at same would still fail because if the settlement were voided the parties could not be put into status quo. Plaintiff had and still has a right to reply on the conclusiveness of the $15,000 settlement figure. She has already indicated that she would not accept $10,000 and thus if the settlement were voided plaintiff would be entitled to place the matter back on the Trial Calendar. This would mean that plaintiff could be put into a position of trying her case more than one year after it had originally been scheduled for trial. If plaintiff were placed in such a position, it is clear that she would not be in status quo since at best the memories of her witnesses will be diminished by the passage of time and, at worst, her witnesses may be totally unavailable for trial. In addition, to allow defendant to void the settlement and put *902 plaintiff through the expense of renegotiation and possibly a trial would subject plaintiff to additional and costly legal fees. Finally, if the settlement were voided, plaintiff would be at a tactical disadvantage having already disclosed to defendant the value of her claim. In the court’s opinion, neither plaintiff, nor for that matter, the defendant, can be placed in status quo if this settlement were to be voided. Thus for all the reasons expressed above, this court finds that defendant may not seek to void its settlement agreement with the plaintiff based upon unilateral mistake.
Having concluded that defendant cannot upset the stipulation because of its unilateral mistake there remains to be resolved the issues of estoppel and the question of an agent’s authority in settlement negotiations. Plaintiff argues that the doctrine of "equitable estoppel” precludes the defendant from asserting that there is only $10,000 in coverage. As defined in New York Jurisprudence, "Equitable estoppel, or estoppel in pais, is a term applied * * * to a situation where, because of something which he has done or omitted to do, a party is denied the right to plead or prove an otherwise important fact. The doctrine rests upon the word or deed of one party which is rightfully relied upon by another who, as a result, changes his position to his injury, so that it would be inequitable to permit the first to enforce rights inconsistent therewith.” (57 NY Jur 2d, Estoppel, Ratification and Waiver, § 13, citing Holm, v C.M.P. Sheet Metal, 89 AD2d 229 [4th Dept 1982]; Otis Elevator Co. v Heggie Realty Co., 107 Misc 2d 67 [1980].)
It has already been discussed above how it would be to plaintiff’s detriment if this settlement were to be voided. Plaintiff had every reason and right to rely on defendant’s offers above $10,000 and as such it would be inequitable to allow defendant at this late stage to renege on the accepted offer of $15,000, despite the $10,000 limit of the policy. The doctrine of estoppel, being equitable in nature and not statutory, is thus available to the plaintiff herein to do equity and prevent the injustice that would devolve upon the plaintiff if the settlement were vacated. (See, Angerosa v White Co., 248 App Div 425, affd, 275 NY 524.) For this reason and considering all the circumstances of this case, the doctrine of equitable estoppel prevents defendant from "hiding behind” its $10,000 policy in order to avoid paying to plaintiff the additional $5,000 which is due her under the negotiated settlement.
The last issue to be resolved is the question of an agent’s *903 authority in settlement negotiations. As noted above, plaintiff’s counsel conducted settlement negotiations on this case with Mr. Hawkins, a senior claims representative of CNA Insurance Company, the carrier for the defendant driver. It was Mr. Hawkins who initially offered $12,500 to settle the case and ultimately proffered the $15,000 which plaintiff accepted. The court is well aware that plaintiff’s lawyers often carry out their negotiations directly with the carrier’s claims representatives since ultimately these representatives are the ones who must okay any settlement figure. Thus, in the court’s opinion, it is clear that Mr. Hawkins was acting within the scope of his authority when making representations regarding settlement or policy limits, even though he was mistaken regarding said limit. The defendant herein cannot now escape liability for its representative’s mistake since this representative was acting with actual and apparent authority when he made settlement offers to the plaintiff. An agent’s "scope of authority” includes not only the actual authorization conferred upon the agent by his principal but also that which has apparently or impliedly been delegated to him (Wen Kroy Realty Co. v Public Natl. Bank & Trust Co., 260 NY 84).
CONCLUSION
For all of the above reasons and based upon all of the circumstances and facts of this case the court finds that plaintiff has sustained her burden of proof and that the stipulation settling the case for $15,000 is valid and enforceable. Accordingly, judgment for the plaintiff in the amount of $15,000 with interest from March 8, 1988 plus costs and disbursements.

. The May 2, 1988 letter was sent after defendant realized its mistake but nevertheless confirmed the original settlement amount of $15,000.

. The court notes that this is not a situation where plaintiff seeks to create coverage where none existed heretofore. If there was no coverage in existence and the company settled by mistake, the court would be loath to enforce the settlement.