[603 NYS2d 230]

In the Matter of JOSEPH CANABUSH, Respondent, v EVELYN E. WANCEWICZ, Appellant. (And Another Related Proceeding).

Third Department, November 4, 1993

APPEARANCES OF COUNSEL

*Hinman, Straub, Pigors & Manning, P. C.,* Albany *(John J. D'Andrea* of counsel), for appellant.

*R. Steven Aceti, P. C.,* Schenectady *(Margaret C. Tabak* of counsel), for respondent.

**OPINION OF THE COURT**

CASEY, J.

At issue on this appeal is whether Family Court correctly applied the "best interest" analysis in a child custody dispute between respondent, who is the child's biological mother, and petitioner, who is not the child's biological father. We conclude that despite the parties' stipulation to use the "best interest" analysis in any custody proceeding between them, Family Court could not deprive respondent of the custody of her son in the absence of surrender, abandonment, persisting neglect, unfitness or other extraordinary circumstances. The order which granted petitioner's application must, therefore, be reversed.

After the parties dated for a period of time, respondent became pregnant and her son, Kyle, was born in March 1985. The parties thereafter resided together sporadically for several years until respondent relocated with Kyle in June 1991. During this period, respondent commenced a paternity proceeding against petitioner which resulted in a declaration of paternity and an order of joint custody with petitioner having primary physical custody of Kyle. In June 1988 the declaration of paternity and custody order were vacated on respon-

dent's application, and a subsequent blood test excluded petitioner as Kyle's father. The ensuing custody proceeding resulted in a stipulation, entered into in May 1990, which granted custody of Kyle to respondent and visitation to petitioner. The stipulation also provided that despite his status as a nonparent, petitioner would be held to the same standards and burden of proof as a natural parent in any proceeding pursuant to article 6 of the Family Court Act concerning custody and/or visitation.

Shortly after the stipulation was executed, respondent returned Kyle to petitioner where he remained until June 1991, when respondent took Kyle with her and moved out of the area. Petitioner then commenced this proceeding to modify the custody arrangement embodied in the stipulation, alleging that a modification of custody was warranted by a change in circumstances and that it was in Kyle's best interest to reside with petitioner. After a fact-finding hearing which focused on the parties' conduct subsequent to the execution of the May 1990 stipulation, Family Court concluded that an award of custody to petitioner would be in Kyle's best interest, which was the standard agreed to by the parties in their stipulation. Respondent appeals from the order entered on Family Court's decision.

Parties to a civil dispute are free to fashion the basis upon which the controversy will be resolved and in so doing they can stipulate away statutory and even constitutional rights, unless public policy is affronted (*Mitchell v New York Hosp.*, 61 NY2d 208, 214). It has long been the law in this State that absent surrender, abandonment, persisting neglect, unfitness or other like extraordinary circumstances, a biological parent has a right to the care and custody of his or her child superior to that of all others (*Matter of Male Infant L.*, 61 NY2d 420, 426). In the stipulation at issue, respondent effectively agreed to elevate petitioner's status to that of Kyle's biological parent in any custody or visitation proceeding between petitioner and respondent. In so doing, however, respondent did not merely stipulate away some personal right, for Kyle is not her property (*see, Matter of Sanjivini K.*, 47 NY2d 374, 382). As the Court of Appeals recently explained: "Looking to the *child's* rights as well as the parents' rights to bring up their own children, the Legislature has found and declared that a child's need to grow up with a 'normal family life in a permanent home' is ordinarily best met in the child's 'natural home' " (*Matter of Michael B.*, 80 NY2d 299, 309, quoting Social

Services Law § 384-b [1] [a] [i], [ii] [emphasis in original]). Thus, the rule favoring a biological parent in a custody dispute with a nonparent is not merely a procedural device to facilitate the resolution of difficult cases. "Rather, the rule fosters both the parent's 'rights' and the well-being of the child 'by recognizing that they ordinarily converge' * * *. Conversely, where 'extraordinary circumstances' exist, the law recognizes that those interests do not necessarily converge, and further inquiry into the child's best interests is then required before a custody dispute between a parent and nonparent may be resolved" (Matter of Boyles v Boyles, 95 AD2d 95, 96-97).

Because the rule which requires an initial showing of extraordinary circumstances in a custody dispute between a parent and a nonparent is not merely a procedural device, but is a substantive requirement inextricably intertwined with the child's best interest (see, Matter of Ronald FF. v Cindy GG., 70 NY2d 141, 144), we conclude that as a matter of public policy a stipulation in which a parent agrees that a nonparent need not show extraordinary circumstances in a future custody dispute should not be enforced. Family Court, therefore, erred in determining Kyle's best interest without first determining whether extraordinary circumstances existed (see, Matter of Male Infant L., supra, at 427).

We reject respondent's contention that the petition should be dismissed because the evidence in the record is insufficient to show that she is unfit or has abandoned or surrendered Kyle or is guilty of persistent neglect. The hearing held by Family Court focused on the parties' conduct subsequent to their execution of the stipulation in May 1990 and, therefore, there is little evidence in the record concerning respondent's conduct during the period following Kyle's birth until May 1990, which could be relevant to the issue of extraordinary circumstances. Nevertheless, there is sufficient evidence to suggest that a further hearing is required. For example, although the psychological parenthood of a nonparent may be insufficient in and of itself to constitute an extraordinary circumstance (Matter of Dehar v Dehar, 134 AD2d 656, 657), this Court has recognized that a mother's direct involvement in the creation and development of a father-son relationship between a nonparent and her child, which puts the child in a situation where his welfare could be affected drastically, can be an extraordinary circumstance (Matter of Boyles v Boyles, supra, at 99). There is evidence in the record which suggests

that respondent may have engaged in such conduct. We also note that although the stipulation purporting to elevate petitioner's status to that of Kyle's parent is unenforceable, it is not irrelevant to the issue of extraordinary circumstances for it evinces an intent on respondent's part to relinquish her superior right to the custody of Kyle insofar as petitioner is concerned. In our view, the appropriate remedy is to remit the matter to Family Court for a hearing at which all of the evidence relevant to the issue of extraordinary circumstances can be presented by the parties. We have considered respondent's other arguments and find no merit in them.

YESAWICH JR., J. P., CREW III, WHITE and MAHONEY, JJ., concur.

Ordered that the order is reversed, on the law, without costs, and matter remitted to the Family Court of Schenectady County for further proceedings not inconsistent with this Court's decision.