[642 NYS2d 452]

In the Matter of MICHAEL G. B., Respondent, v ANGELA L. B., Appellant.

Fourth Department, April 19, 1996

### APPEARANCES OF COUNSEL

*Judith C. Malkin,* Syracuse *(Kimberly Jordan* of counsel), for appellant.

*Raymond J. Dague,* Syracuse, for respondent.

*Joseph Kelly,* Liverpool, for *Law Guardian.*

### OPINION OF THE COURT

BALIO, J.

Angela L. and Michael G. B. married on July 31, 1988 in Reno, Nevada. They resided in Oregon for about four months before moving to New York. A daughter, Cathleen (Katie), was born on February 11, 1992. The parties physically separated in July of 1992, and Angela relocated to Oregon with Katie and Robert (Robby), her five-year-old son of a prior marriage. Robby's biological father is deceased. A month later, Angela and Michael entered into a separation agreement. The agreement provides that the parties shall have joint custody of Robby and Katie, that Michael shall have sole physical custody of the children, and that Angela shall have liberal visitation in accordance with the schedule set forth in the agreement. The agreement was incorporated without merger into a pendente lite order of separation.

On April 1, 1993, Michael filed a petition in Family Court seeking an order directing that any visitation exercised by Angela be supervised. Michael maintained that unsupervised visitation would be detrimental to the children's welfare because Angela is unstable and refuses to inform him of when and where upcoming visitations will take place. On July 7,

1993, Angela cross-petitioned for an order modifying the order of separation and the separation agreement to award physical custody of the children to her. Angela maintained that, as the biological parent of Robby, she has a right to custody of Robby superior to that of Michael, a nonparent, and that, because Robby and Katie should not be separated, it is in the best interests of the children that she have physical custody.

Family Court rejected the contention that Angela has a superior right to custody of Robby that cannot be denied absent a showing of extraordinary circumstances. The court concluded that, because the parties sought to modify the terms of an agreement incorporated into a court order, the "best interests" test should be applied in resolving the custody dispute. After a trial, the court denied Angela's cross petition and, with respect to Michael's petition for supervised visitation, directed that any visitation be exercised by Angela in Onondaga County, New York.

## I

Family Court erred in resolving the issue of physical custody without first considering whether extraordinary circumstances exist to deprive Angela of her superior right to custody of Robby. Although no parent has an absolute right to custody of a child (*Matter of Tyrrell v Tyrrell*, 67 AD2d 247, 248), it is settled law that, as between a biological parent (parent) and a nonbiological parent (nonparent), the parent has a superior right to custody that cannot be denied unless the nonparent can establish that the parent has relinquished that right because of "surrender, abandonment, persisting neglect, unfitness or other like extraordinary circumstances" (*Matter of Bennett v Jeffreys*, 40 NY2d 543, 544; *see also, Matter of Michael B.*, 80 NY2d 299, 309; *Matter of Male Infant L.*, 61 NY2d 420, 426-428; *Matter of Merritt v Way*, 58 NY2d 850). The nonparent has the burden of proving that extraordinary circumstances exist, and until such circumstances are shown, the court does not reach the issue of the best interests of the child (*Matter of Male Infant L., supra*, at 427; *Matter of Merritt v Way, supra*).

Family Court, relying upon *Darlene S. v Justino L.* (141 Misc 2d 303), nevertheless concluded that, because Angela sought to modify the terms of the separation agreement awarding physical custody of the children to Michael and because that agreement had been incorporated into an order of separation, it was unnecessary to apply the "extraordinary circumstances" test

with respect to the issue of custody of Robby. The court's reliance upon *Darlene S.* was misplaced (*see, Matter of Cannon v Armstrong*, 212 AD2d 945; *Matter of Gray v Chambers*, 206 AD2d 619). Absent a prior determination on the merits that extraordinary circumstances exist, the court must apply the "extraordinary circumstances" test when a nonparent seeks custody, even if there is an existing order regarding custody of that child (*see, Matter of Cannon v Armstrong, supra; Matter of Williams v Dunston*, 202 AD2d 681, *lv denied* 84 NY2d 803; *Matter of Pauline G. v Carolyn F.*, 187 AD2d 589; *Matter of Milligan v English*, 132 AD2d 967). No prior determination of extraordinary circumstances has been made in this case, and the court should have considered whether such circumstances exist before considering the best interests of the child.

## II

Because evidence was elicited at the hearing without regard to the "extraordinary circumstances" test and without imposing the burden of proof upon the nonparent, ordinarily we would remit for a new hearing to enable the nonparent to satisfy his evidentiary burden (*see, Matter of Cannon v Armstrong, supra; Matter of Canabush v Wancewicz*, 193 AD2d 260, 263). We conclude, however, that the record is adequate for application of the "extraordinary circumstances" test and, because our authority in custody matters is as broad as that of Family Court (*see, Matter of Louise E. S. v W. Stephen S.*, 64 NY2d 946, 947), we reach that issue in the interest of judicial economy.

There is no contention that Angela surrendered, abandoned or neglected her children, and there is no proof that Angela is an unfit parent. Thus, the question is whether the nonparent has shown an "equivalent but rare extraordinary circumstance which would drastically affect the welfare of the child" (*Matter of Bennett v Jeffreys, supra,* at 549).

What proof is sufficient to establish such equivalent but rare extraordinary circumstances cannot be precisely measured. We do know that it is not enough to show that the nonparent " ' "could do a 'better job' of raising the child" ' " (*Matter of Tyrrell v Tyrrell, supra,* at 248, quoting *Matter of Corey L. v Martin L.*, 45 NY2d 383, 391), or that the child has bonded psychologically with the nonparent (*Matter of Gray v Chambers*, — AD2d —, 1995 NY Slip Op 10933 [3d Dept, Dec. 7, 1995], *lv denied* 87 NY2d 811). Further, the fact that the parent agreed that a nonparent should have physical custody of the child or

placed the child in the custody of a nonparent is not sufficient, by itself, to deprive the parent of custody (*see, Matter of Paul v Wallace*, — AD2d —, 1996 NY Slip Op 03732 [decided herewith]; *Matter of Gray v Chambers, supra; Matter of Canabush v Wancewicz, supra; Matter of Woodhouse v Carpenter*, 134 AD2d 924). On the other hand, the parent's voluntary relinquishment of physical custody, together with other relevant factors, such as the prolonged separation of parent and child, the psychological attachment of the child to the nonparent and the parent's lack of an established household and unwed state, may constitute extraordinary circumstances warranting consideration of the best interests of the child (*see, Matter of Canabush v Wancewicz, supra; Matter of Pauline G. v Carolyn F., supra; Matter of Mary H. v Helen P.*, 131 AD2d 571; *Matter of Curry v Ashby*, 129 AD2d 310; *Matter of Michael Paul T. v Thomas R.*, 124 AD2d 970; *Matter of Callahan v Denton*, 114 AD2d 663; *but see, Matter of Gray v Chambers, supra*).

We conclude that extraordinary circumstances exist in this case warranting consideration of the best interests of the child. Angela's voluntary relinquishment of physical custody to Michael was not intended as a temporary measure. Angela signed a separation agreement that permanently placed the children in the physical custody of Michael. Angela has made no attempt to set aside the agreement and, although she alleged in her cross petition that the agreement was the product of duress, she failed to support that allegation. She sought to regain physical custody only in response to Michael's application to impose a limitation upon visitation. In addition to intending that the custodial arrangement be permanent, Angela has purposefully refrained from informing Robby that Michael is not his father. Since her marriage to Michael, Angela has used Michael's surname as Robby's surname. Except for the one-month period when the parties separated and Angela relocated to Oregon, Robby has resided with Michael since he was 18 months old. Michael is the only father that Robby has known and, for six years, Angela has purposefully fostered that parent-child relationship and helped to create the psychological bond of parent and child. Robby's expressed fear and anxiety about visiting Angela in Oregon demonstrate that a disruption of the custodial arrangement could drastically affect Robby's welfare (*see, Matter of Canabush v Wancewicz, supra*, at 263-264 [mother's direct involvement in creating and developing father-son relationship can be an extraordinary circumstance]; *Matter of Boyles v Boyles,*

95 AD2d 95, 99 [same]). In addition, Angela has failed to maintain steady employment or to develop a reliable financial plan for the care of the children. Her inability to exercise scheduled visitation is related to her financial circumstances. Though married to Michael at the time of the hearing, Angela resided with her fiancé and planned for the children to reside with them in a house they intended to build and for her paramour to support the children while she attended school.

Two additional factors, unique to this case, further support the conclusion that extraordinary circumstances exist. First, an award of physical custody to the nonparent would not deprive Angela of all custodial rights. She would retain her right to joint custody pursuant to the separation agreement. Thus, we need not consider whether Angela's conduct demonstrates "a complete abdication of or inability to assume parental responsibilities" (*Matter of Gray v Chambers, supra,* at —). It is enough that Angela has demonstrated her intent that Michael permanently assume the parental responsibility of physically caring for Robby.

Second, as even the parties agree, the children should not be separated. The record shows that there is a strong sibling bond between Robby and Katie. Their sibling relationship "should not be disrupted 'unless there is some overwhelming need to do so' " (*White v White,* 209 AD2d 949, 950, *lv dismissed* 85 NY2d 924, quoting *Pawelski v Buchholtz,* 91 AD2d 1200, 1201). Although consideration of the separation of siblings is customarily applied as a factor in determining best interests, we conclude that it should also be applied to our consideration of exceptional circumstances in this case. Michael is not the biological parent of Robby, he is the biological parent of Katie. Thus, the "extraordinary circumstances" test applies only to the custodial dispute concerning Robby. In factual situations such as this, it is conceivable that the nonparent might not be able to show that extraordinary circumstances exist with respect to one sibling but could show that continued custody of both siblings would be in the best interests of the children. In such situations, it is important to consider the effect that a separation would have upon the siblings in determining whether extraordinary circumstances exist. The record shows that a separation from his sibling would drastically affect the welfare of Robby, further proof that extraordinary circumstances exist.

## III

Having determined that extraordinary circumstances exist, we conclude that Family Court properly determined that the best interests of the children would be served by continuing the current custodial arrangement.

## IV

We further conclude, however, that Family Court improvidently exercised its discretion in directing that all future visitation exercised by Angela be restricted to Onondaga County. The petition filed by Michael did not request that visitation be restricted to Onondaga County; it asked only that visitation exercised by Angela be supervised. The separation agreement provides that visitation be exercised in New York only during the children's spring vacation and contains no restriction upon visitation at other times during the year. There is no evidence of changed circumstances sufficient to warrant the more extensive restriction imposed by the court.

The court determined that any visitation exercised by Angela should be restricted to Onondaga County based upon her history of instability, the lack of an investigation and evaluation of her home environment, her lack of consistent visitation with the children, Robby's preference that visitation occur in New York, and the recommendations of both the probation officer, who conducted a home study in New York, and the Law Guardian.

Michael sought an order directing that visitation be supervised because of a suspicion that Robby was traumatized, possibly by sexual or physical abuse, while in Oregon with his mother. No evidence was presented to establish anything more than a suspicion, and the court made no finding that any conduct had occurred in Oregon that was, or would be, detrimental to Robby. Moreover, although Robby expressed some fear and anxiety concerning two adult males with whom Angela was living when the children were in Oregon, Angela no longer resides with those individuals and has no contact with them.

At the time he entered into the separation agreement, Michael was aware of Angela's history of emotional problems. His attorney nevertheless prepared the agreement, which provides for unsupervised visitation that, at certain times, may be exercised in Oregon. Michael also had the opportunity to observe Angela's home environment when he traveled to Oregon to procure Angela's consent to the agreement. After

returning to New York, however, he asked that the agreement be incorporated into an order of separation. There is no evidence of a material change in Angela's home environment that would warrant restricting visitation to Onondaga County. Further, we fail to perceive that a lack of frequent visitation warrants the imposition of a geographical restriction.

The court noted that, during an in camera interview, Robby expressed a preference to remain in New York and to have his mother visit him in New York. Because that interview was not transcribed (*see,* Family Ct Act § 664), we are unable to review the context and strength of that expressed preference (*see, Ladizhensky v Ladizhensky,* 184 AD2d 756, 758). In any event, the court properly noted that the child's preference is not determinative of the custody issue (*see, Fox v Fox,* 177 AD2d 209, 211), and we perceive no reason to depart from that precedent.

It appears that the court's principal reason for restricting visitation to Onondaga County was the absence of a comprehensive evaluation or study of Angela's home environment. The court mentioned that factor and additionally observed that the probation officer and Law Guardian recommended that visitation be restricted to New York. Those recommendations were based upon Angela's failure to produce a home study or evaluation. We are not persuaded that, in the context of these proceedings, it was Angela's burden to produce that study. Michael sought the imposition of a restriction upon visitation and, had the court properly applied the "extraordinary circumstances" test, Michael would have had the burden of proving those circumstances, including the alleged unstable home environment. Although Angela had the burden of providing a home study to support her contention that a change of physical custody would be in the best interests of the children, the initial burden remained with Michael on his petition to restrict visitation and regarding physical custody of Robby. Further, in the context of these proceedings, the absence of evidence should not be the basis for modifying the agreement of the parties and imposing an unrequested restriction upon visitation. In that respect, we note that a police officer did inspect Angela's residence in Oregon and determined that it was appropriate for children.

This Court has been apprised that an evaluation of Angela's home environment became available shortly after Family Court issued its determination. Under the circumstances, the issue of restricted visitation should be remitted to Family Court

for an immediate hearing and the submission of additional proof on that issue, including updated studies regarding the home environments of the parties. The separation agreement provides that visitation during the children's spring vacation shall be exercised in New York. Because that is the next scheduled visitation, we see no need to impose a temporary restriction upon visitation pending that hearing.

## V

Accordingly, the order should be modified to vacate the direction that visitation be restricted to Onondaga County, and the matter should be remitted to Onondaga County Family Court for an immediate hearing and the submission of additional proof on the issue of restricted visitation.

DENMAN, P. J., LAWTON, WESLEY and BOEHM, JJ., concur.

Order unanimously modified, on the law, and as modified, affirmed, without costs, and matter remitted to Onondaga County Family Court for further proceedings in accordance with the opinion by BALIO, J.