OPINION OF THE COURT
Damian J. Amodeo, J.
In this proceeding petitioner seeks modification of a prior judgment of divorce which provides for joint custody of two children, Brandon S. (date of birth June 6, 1994) and Anthony B.S. (date of birth Apr. 15, 1990). Petitioner requests that the court continue the existing joint custodial arrangement between the parties; that he be granted primary residential custody; and, that the respondent’s visitation be limited to daytime visits outside the presence of her paramour, Larry L. On May 19, 1997, following receipt of an updated probation report,[1] respondent (hereinafter mother) made a motion to dismiss the petition, on the ground that the petitioner is not *826 Anthony’s biological father[2] and, therefore, lacks standing to bring a custody petition, at least as to that child.
Throughout the proceedings both parties have been represented by counsel and each child by a separate Law Guardian. In addition to the petitioner’s submissions in opposition to the motion to dismiss, both Law Guardians have submitted affirmations in opposition urging the court to deny the mother’s motion to dismiss the modification petition.
ISSUE PRESENTED
The primary issue to be determined at this stage of the proceeding is whether petitioner’s status as a nonbiological parent requires dismissal of the petition as to the child Anthony. For the reasons articulated below, the court answers that question in the negative and the mother’s motion to dismiss is denied.
BACKGROUND
Most of the facts essential to the court’s determination of the mother’s motion are undisputed. The parties began dating in December 1990 and were married in August 1991, when Anthony was only a few months old.[3] Brandon, a product of the marriage, was born in June 1994 and the parties were divorced in April 1996.
The divorce judgment, entered in Supreme Court, Dutchess County (Jiudice, J.), incorporates the terms of a separation agreement which, among other* things, provides for joint custody of Brandon. As to Anthony, the agreement provides that, although he is not petitioner’s biological son, all the terms concerning custody of the children are intended to include Anthony, as if he were petitioner’s natural child. The agreement further provides that, if the mother dies or becomes incapacitated prior to Anthony reaching the age of majority, the petitioner would be permitted to raise Anthony with a "superior right to all others.” The parties, while recognizing that this latter provision might not be absolutely binding, state *827 that it reflects the relationship which exists between the petitioner and the child; the fact that the child regards the petitioner as his father; and, that the petitioner has always treated Anthony as his son.
Under the agreement and judgment, neither parent is designated the primary physical custodian and the children are to spend equal time with both, residing with the mother on Mondays, Wednesdays and alternating weekends from Friday through Sunday, and with the petitioner on Tuesdays, Thursdays and alternating weekends.
Furthermore, pursuant to the agreement and judgment, petitioner has been paying child support for both boys in the amount of $750 per month, unallocated; he provides medical insurance for the children; and, he has equally shared day care expenses.
Although the mother now asserts that she was pressured into signing the separation agreement, she never made any attempt to have the agreement set aside, and has failed to submit any meaningful support for that allegation. In addition, the mother has accepted all of the benefits of the separation agreement and has substantially complied with the provisions of that agreement as they relate to custodial issues.
It is undisputed that the petitioner has treated Anthony in every sense as his own child; that by agreement of the parties Anthony has not been told that petitioner is not his father, even to this day; and, that Anthony uses petitioner’s surname. The probation report indicates that the petitioner is the only father Anthony has ever known; that he believes the petitioner is his father; that the boys believe they are brothers; and, that the mother does not wish Anthony to know, at least at this time, that petitioner is not his biological father.
The modification petition alleges that there has been a change of circumstances since entry of the divorce judgment which makes it inappropriate for the children to continue to be with the mother on an overnight basis. Specifically, it alleges that the children are exposed to domestic violence in the mother’s household; that the children have witnessed physical violence and loud arguments between the mother and her paramour, Mr. L.; that the mother’s life was threatened by her paramour; that because of this the mother was forced to leave the area for Tennessee in October 1996; that when she left she placed the children with petitioner for a period of time; that Mr. L., who resides with the mother, is a convicted felon and has other criminal charges pending against him; that the chil *828 dren have been left at Mr. L.’s tattoo shop without proper adult supervision; that petitioner uses day care for the children even though she is not working and should be available for their care; that the six year old is being left in charge of the two year old; that Anthony is demonstrating mood swings and other behavioral problems; that Brandon is not developing properly; that the mother is not providing proper nurturing and care; that Anthony’s performance in school is "going down hill”; and, that the mother’s residence is not properly maintained and is kept in a dirty condition.
LEGAL ANALYSIS
In considering a motion to dismiss the court must accept, as true, the allegations contained in the petition and resolve all reasonable inferences in favor of the petitioner (Sanders v Winship, 57 NY2d 391, 394).
A. Equitable Estoppel
The mother argues that there is no claim of abandonment, unfitness or other extraordinary circumstances and, therefore, petitioner as a nonparent has no standing to bring this custody petition under the doctrine of Matter of Bennett v Jeffreys (40 NY2d 543) and its progeny. Petitioner and both Law Guardians argue that under the facts of this case the mother should be equitably estopped from invoking petitioner’s status as a nonbiological parent[4] and that the court should proceed with a straight "best interest” analysis, without requiring a preliminary showing of extraordinary circumstances.
Application of the doctrine of equitable estoppel to custody cases was discussed by Elliot D. Samuelson in a recent issue of the Family Law Review (see, Samuelson, Is the Doctrine of Equitable Estoppel Viable in a Child Custody Dispute?, 29 Fam L Rev 1 [Mar. 1997]). The hypothetical fact pattern presented in that article is remarkably similar to actual facts present in this case. Mr. Samuelson opines that in determining custody issues it is inappropriate for the courts to give greater weight to the concerns of parents than to the rights of children. The author goes on to suggest that, in certain instances, the doctrine of equitable estoppel should be applied to avoid destroying a loving and enduring relationship between a child and a nonbiological parent.
*829 Equitable estoppel has been defined as the "effect of voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct.” (Black’s Law Dictionary 538 [6th ed 1990]; see generally, Mazzola v CNA Ins. Co., 145 Misc 2d 896, 902.) The doctrine is traditionally invoked " 'to prevent the enforcement of rights which * * * would ultimately work fraud or injustice upon the person against whom enforcement is sought’ ” (Terrence M. v Gale C, 193 AD2d 437, 438 [citations omitted]). An estoppel defense may also be invoked where the failure to assert a right has given rise to circumstances rendering it inequitable to permit the exercise of the right after a lapse of time (Matter of Ettore I. v Angela D., 127 AD2d 6).
This doctrine has been applied for many years in paternity cases (Matter of Ettore I. v Angela D., supra) and has allowed courts to treat a nonbiological parent as a parent, even though blood test evidence may conclusively establish that a man could not be the biological father of a child (Matter of Richard W. v Roberta Y., — AD2d —, 1997 NY Slip Op 05524 [3d Dept, June 5, 1997]). It has also been invoked to preclude a party from being compelled to submit to a blood-grouping test (David L. v Cindy Pearl L., 208 AD2d 502) and to protect the status of a child in a "recognized and operative parent-child relationship” (Matter of Lorie F. v Raymond F., — AD2d —, 1997 NY Slip Op 04438 [3d Dept, May 8, 1997]; see also, Matter of Baby Boy C., 84 NY2d 91, 102, n). This line of cases clearly demonstrates that a court’s concern for the best interests of a child, at times, can and should take precedence over a determination of biological paternity. This court perceives no logical reason for allowing the doctrine of equitable estoppel to be used to advance the best interests of the child in a paternity case and to disallow application of that doctrine in the context of a custody case, not involving issues of paternity. In each situation, the fundamental rights sought to be protected and the reasons advanced for protecting those rights are identical — the best interests of the child involved. Once equitable estoppel is applied in a paternity case, the effect is to treat a nonbiological parent, in all respects, on an equal footing with a biological parent and allow a court to reach a "best interests” determination in any custody dispute between the parties (Matter of Boyles v Boyles, 95 AD2d 95). In paternity cases, when the doctrine of equitable estoppel has been applied, the courts have *830 conferred, legal parental status upon a person who is or may not be a biological parent, when the parties, by their actions, have treated the nonbiological parent as a de facto parent and it is in the best interests of the child to continue to do so. When equally compelling conduct is present in the context of a custody dispute between a parent and nonbiological parent the same standard should apply even if paternity is not an issue.
When courts decide to apply equitable estoppel in custody matters involving a parent and nonbiological parent it has almost always been done in the name of the best interests of the child. (Matter of Louise P. v Thomas R., 223 AD2d 592; Richard B. v Sandra B. B., 209 AD2d 139; Matter of Ettore I. v Angela D., supra, at 14; see also, Polikoff, The Deliberate Construction of Families Without Fathers: Is it an Option for Lesbian and Heterosexual Mothers?, 36 Santa Clara L Rev 375, 383 [1996].) Samuelson suggests that "a nonbiological parent should be accorded the same rights as a natural parent, if to do so would be consistent with ensuring that the best interests of the child would be preserved” (Samuelson, op. cit., at 2).
In considering this matter, the court is aware of the line of Third Judicial Department cases which holds that it is against public policy to allow a parent to stipulate away a child’s right to be reared by his or her biological parent and that any stipulation which may elevate a nonbiological parent to the status of a parent in a custody case is against that public policy (see, e.g., Matter of Cindy P. v Danny P., 206 AD2d 615; Matter of Canabush v Wancewicz, 193 AD2d 260). This court suggests that it may be appropriate to reexamine the public policy which has consistently been advanced as the basis for such a rationale. Carrying this public policy argument to its ultimate conclusion would preclude a biological parent from consenting to the adoption of a child by that parent’s spouse and would preclude a parent from permanently surrendering the care and custody of a child to an agency for later adoption by some other individual or consenting to a private-placement adoption. While consents to adoption and surrenders are creatures of statute, this court can conceive of no fundamental "public policy” difference between a parent’s consent to the adoption of his or her child by a stepparent and an agreement between a parent and stepparent which allows the stepparent to have certain custodial rights with respect to the child. Similarly, if a parent can give up all rights to a child in the context of a judicial surrender or a private-placement adoption, why should that parent not be allowed to give up limited rights to that *831 same child in the context of an agreement similar to the one in this case? How is public policy advanced in the former situations and defeated in the latter?[5]
Should any principle which is asserted to be based upon public policy continue to be given effect when adherence to such a principle causes a result which tends to defeat the very public policy upon which the principle is allegedly based? How can a principle be advanced in the name of public policy when the practical application of that principle works to destroy a child? If this court were to follow the rationale in Canabush (supra), as urged by respondent, it would almost certainly contribute to the destruction of long-established and loving parental and sibling bonds.
Application of the doctrine of equitable estoppel is warranted in this case. Here, the mother entered a separation agreement which clearly acknowledged that petitioner has treated Anthony as his biological son; that Anthony uses petitioner’s surname; that the joint custodial arrangement would apply equally to both children; that the children would spend equal time with each parent; that the petitioner would have rights superior to all others in the event of the mother’s death or incapacity; that the parties would consult with each other on all major issues concerning the children, including education, medical, dental and religious matters; that neither parent would have a veto power over the wishes of the other; that both parents would have unhampered access to all records concerning the children; and, that the parties would exert every reasonable effort to maintain free and unhampered contact between the children and each of them and to foster a feeling of affection and respect between the children and the other parent.
In reliance upon the mother’s conduct since Anthony was only a few months old, petitioner has supported and nurtured Anthony as his own and has developed a strong parental bond with him. In reliance on the separation agreement which was *832 incorporated into the divorce, petitioner has continued that supportive and nurturing relationship since the parties ceased living together. Anthony and his brother have been spending half of their time with petitioner. The mother has accepted support and health insurance from petitioner for Anthony. She has refrained from telling Anthony that petitioner is not his father. In fact, although the modification petition was filed on November 14, 1996, the mother only raised the issue of nonpaternity in May 1997, shortly before the trial was scheduled to begin. Curiously, this issue was advanced after receipt of the updated probation report which, for the first time, recommended that primary physical custody be with the petitioner.
As to Anthony himself, the conduct of the mother allowed him to form a long-standing father-son bond with petitioner. To now treat him as other than the natural child of petitioner could result in not only a separation from the only father he has ever known, but also a separation from his brother, Brandon, with whom Anthony has also developed a strong lifelong bond. So too must the rights and interests of Brandon be considered.
In determining whether it would be appropriate to apply the doctrine of equitable estoppel, the court has also considered the fact that petitioner is not seeking to strip the mother of her custodial rights. Rather, he proposes to continue the joint custodial arrangement and to change residential custody based on his serious concerns about the welfare of both children.
Under all the facts present in this case, the court cannot imagine more appropriate circumstances for application of the doctrine of equitable estoppel.
For the foregoing reasons, the mother is equitably estopped from raising petitioner’s status as a nonbiological parent as an issue in this custody proceeding.
The Court of Appeals holdings in Matter of Alison D. v Virginia M. (77 NY2d 651) and Matter of Ronald FF. v Cindy GG. (70 NY2d 141) do not compel a different result. Neither case involved a grant of custodial rights to a nonbiological parent in a written separation agreement incorporated into a court order nor did either squarely address the issue of equitable estoppel in a context similar to the one presented here.
The court believes that its holding in this case on the issue of equitable estoppel is consistent not only with the language in Matter of Bennett v Jeffreys (40 NY2d 543, 546, supra), which *833 recognizes the "modern principle that a child is a person, and not a subperson over whom the parent has an absolute possessory interest”, but is also consistent with the trend observed in recent decisions which recognizes that strict application of long-standing principles does not always serve the best interests of children (see, e.g., Matter of Tropea v Tropea, 87 NY2d 727, 739; Matter of Jacob, 86 NY2d 651, 658).
Use of the analysis advanced in this case will permit judicial review of the actual best interests of a child, rather than require blind adherence to the theoretical best interests of that child. In dealing with real life issues, public policy is better served if the court’s view is through the clear looking glass of reality rather than through the rose colored glasses of presumptive reality.
B. Extraordinary Circumstances
Even if respondent were not estopped from asserting petitioner’s status as a nonbiological parent, the court finds that petitioner has alleged and the mother has conceded sufficient extraordinary circumstances to defeat the motion to dismiss and to warrant a hearing on petitioner’s application for a change of custody (Matter of Pellicciotti v Pellicciotti, 206 AD2d 616). Many of the same factual matters relied upon in determining the equitable estoppel issue would also be relevant in determining whether extraordinary circumstances warrant a best interests analysis.
Assuming, arguendo, that petitioner was to be considered a nonbiological parent, he must first show persistent neglect, unfitness or other like "rare extraordinary circumstance which would drastically affect the welfare of the child” before the court may proceed to a best interests inquiry (Matter of Bennett v Jeffreys, supra, at 549). Although those rare extraordinary circumstances may be difficult to precisely define or measure (Matter of Michael G. B. v Angela L. B., 219 AD2d 289, 292), the court concludes that sufficient extraordinary circumstances have been alleged or conceded to proceed to a hearing.
The mother has been directly involved in the creation and development of a father-son relationship and a psychological bond which may put the child in a situation where his welfare could be drastically affected (Matter of Canabush v Wancewicz, supra, at 263; see also, Matter of Michael G. B. v Angela L. B., supra, at 292; see also, Matter of Boyles v Boyles, 95 AD2d 95, 100, supra); the mother signed a separation agreement granting petitioner joint custody of Anthony and has made no at *834 tempt to set aside that agreement; the mother has continued to refrain from revealing to her son that petitioner is not the real father; she has allowed Anthony to use petitioner’s surname; she has in every way "purposely fostered that parent-child relationship” (Matter of Michael G. B. v Angela L. B., supra, at 293); the mother led the father to believe that she would not enforce whatever superior right she might claim by asserting that petitioner was not the father (Matter of Boyles v Boyles, supra, at 98); she willingly accepted the terms of the separation agreement by fully accepting monetary payments, including support for Anthony; both Anthony and petitioner have relied on respondent’s actions and developed a strong father-son relationship.
Proof that separation of a child from his sibling will drastically effect the welfare of that child has also been considered extraordinary circumstances. (See, Matter of Michael G. B. v Angela L. B., supra, at 294.) Here, as in Michael G. B., it is alleged that a strong sibling bond exists between Anthony and Brandon. Since a strong sibling bond exists between the brothers, petitioner should be allowed to demonstrate whether separation of the siblings would so effect Anthony so as to rise to the level of extraordinary circumstances.
In addition, there are allegations that the child is living in a household in which domestic violence is occurring. Recognizing the negative effects that exposure to domestic violence has upon the well-being of children, it has been held that the presence of domestic violence in the household in which a child is residing may be considered an extraordinary circumstance allowing a court to reach a best interests analysis in a custody dispute between a parent and a nonrelative (Matter of Peters v Blue, 173 Misc 2d 389). While there is no allegation that the domestic violence is being perpetrated by respondent, there is ample evidence that young children exposed to domestic violence suffer a broad range of developmental and socialization difficulties as a result of being exposed to domestic violence (see, Pagelow, The Effects of Domestic Violence on Children and Their Consequences for Custody and Visitation Agreements, 7 Mediation Q 346 [summer 1990]).
These factors, considered together with petitioner’s allegations as to the mother’s conduct and the behavioral problems of the children, if proven, are sufficient extraordinary circumstances to accord him standing under the first prong of the Matter of Bennett v Jeffreys test.
Although proof of extraordinary circumstances would not be required in light of the court’s holding as to equitable estoppel, *835 petitioner will not be precluded from presenting evidence on this issue during the course of the hearing.
This matter shall proceed to trial, as to both children, on the dates previously scheduled by this court.

. As is its custom, the court ordered a probation investigation and a psychological evaluation of the parties. Counsel stipulated that these reports would be received in evidence as court exhibits, subject to cross-examination of the makers of the reports. The probation report was received on March 5, 1997 and the psychological evaluation on April 8, 1997. An updated probation report was received on May 8, 1997, which for the first time recommended that petitioner be granted residential custody.

. In view of the fact that petitioner is the biological father of Brandon, and all of the respondent’s arguments are addressed to the petitioner’s standing as a nonbiological parent, the court will address the motion to dismiss only as it relates to Anthony.

. The mother indicates that Anthony’s natural father is presently residing in Alabama and in all the years since Anthony’s birth he has never had any contact with the child, nor is he listed on the child’s birth certificate. As far as this court is aware, paternity of Anthony has never been established by a court order.

. The court uses the term "nonbiological” parent, rather than "nonparent”, as that more accurately reflects petitioner’s status as Anthony’s psychological parent.

. In the case of an outright surrender a parent is allowed, for almost any reason and without any assurance as to the future prospects or best interests of the child, to give up all rights to raise that child and the child, without any say in the matter, loses all right to be raised by the surrendering parent(s). In contrast, in cases such as this one, a mother and stepfather, in the name of public policy, would be precluded from entering into an agreement which acknowledges a reciprocal confidence in one another’s ability to care for a child and in which they agree to continue an ongoing loving relationship which each recognizes has and will serve the best interests of the child into the future.