■ In the Matter of Lawrence Eger, Respondent, v Kamie T. Garafolo, Appellant. [674 NYS2d 176] —Carpinello, J. Appeal from an order of the Family Court of Greene County (Lalor, J.), entered July 30, 1997, which granted petitioner's application, in a proceeding pursuant to Family Court Act article 6, for sole custody of his child.

Petitioner and Engrid Tefft (now deceased) are the biological parents of Garland (born in 1990); respondent is Garland's maternal aunt. Petitioner and Tefft, who were never married, separated in 1991 and agreed to joint custody of Garland with physical custody to Tefft and liberal visitation to petitioner. Due to several complaints brought by Tefft against petitioner chiefly relating to petitioner's parenting skills and judgment, petitioner's visitation was limited to supervised visitation by

1992.[1] This limitation continued until February 1994 when petitioner began short unsupervised visits. In July 1994, Tefft died suddenly and respondent immediately requested temporary custody of the child. Upon learning of Tefft's death, petitioner commenced a proceeding seeking sole custody of his son. However, petitioner withdrew his petition out of concern for the child's extreme grief and also the need for him to take steps to rehabilitate his home in the City of Albany to make it suitable for a child. Consequently, temporary custody of Garland was awarded to respondent, who resides with her husband and their two children in a rural area in Greene County.

Petitioner continued to have an ongoing relationship with his son. Petitioner, who is a carpenter/contractor, refurbished his home, attended and completed a court-ordered parenting course, participated in counselling with the child and gradually increased the quantity of time he spent with him, thereby paving the way for overnight visits and eliminating the requirement for supervision. Although the record indicates that respondent was generally cooperative with respect to petitioner's efforts in this regard, she remained skeptical of petitioner's judgment.[2] This resulted in petitioner seeking court intervention to maintain and/or increase visitation on several occasions. In March 1997, petitioner renewed his request for sole custody of his son. Following a three-day hearing at which each party testified and produced several witnesses, the Law Guardian recommended that petitioner be awarded sole custody of the child. Family Court granted petitioner sole custody with generous visitation to respondent following its conclusion that, *inter alia*, no extraordinary circumstances were present to justify an inquiry as to whether the child's best interest would be served by granting custody to a nonparent.[3] This appeal by respondent followed.

Notwithstanding Family Court's initial assumption that the

---

1. Another area of apparent concern was the child's severe separation anxiety when he was away from his mother.

2. For example, respondent complained of instances whereby petitioner took the child up with him on a flat roof where he was working, he once took the child swimming in a group of men, some of whom were nude, and had taken the child nude in a sauna where other nude males were present.

3. Prior to trial, the parties had stipulated that "extraordinary circumstances" existed in this custody dispute between a parent and nonparent and agreed that Family Court would proceed to a "best interest" analysis (*see, Matter of Canabush v Wancewicz*, 193 AD2d 260, 263). However, in its post-hearing decision, Family Court ruled that it erred in allowing the parties to stipulate to extraordinary circumstances and instead ruled that extraordinary

parties' prehearing stipulation on "extraordinary circumstances" was permissible, the matter need not be remitted to Family Court as respondent suggests because, after having conducted a lengthy "best interest" hearing (*see, e.g., Matter of Curry v Ashby*, 129 AD2d 310), Family Court was able to properly consider the "extraordinary circumstances" issue. Family Court had been involved with these parties almost from the child's birth and the proof of the hearing did not merely focus on the parties' conduct following the execution of the stipulation (*see, Matter of Canabush v Wancewicz*, 193 AD2d 260); it also extensively explored the child's living arrangements both before and after his mother's death. Notably, respondent is unable to point to any evidence of petitioner's past or present conduct relating to his suitability as a parent that was overlooked or not fully set forth at the hearing.

Turning to the merits, we note that "[i]t is fundamental that a biological parent has a claim of custody of his or her child, superior to that of all others, in the absence of surrender, abandonment, persistent neglect, unfitness, disruption of custody over an extended period of time or other extraordinary circumstances" (*Matter of Gray v Chambers*, 222 AD2d 753, *lv denied* 87 NY2d 811; *see, Matter of Bennett v Jeffreys*, 40 NY2d 543, 546, 549). Significantly, despite the numerous allegations raised by respondent,[4] the record fails to disclose any proof that petitioner is an unfit parent or that he surrendered or abandoned his child (*see, e.g., Matter of Benzon v Sosa*, 244 AD2d 659, 662; *Matter of William L. v Betty T.*, 243 AD2d 860, 862; *Matter of Oscarson v Maresca*, 232 AD2d 732, 734). As previously noted, petitioner has maintained an ongoing relationship with his son his entire life, attended therapy sessions, renovated his house, attended parenting classes, paid child support and investigated schools for the child. Moreover, despite the abbreviated visitation schedule accorded petitioner and his relatively meager income, he established that he had participated in numerous activities with his son, including camping in the Adirondacks, participation in the local church and folkdancing organization, gardening together as well as participation in other activities that enhanced the child's emotional and intellectual well-being. The alleged lapses in

circumstances were not present. In any event, the court indicated that the child's best interest required custody being granted to petitioner.

4. Along with complaining about the child's fleeting exposure to male nudity, there was testimony indicating that petitioner, for example, was sometimes late with child support payments, may have operated his vehicle with a suspended license at one point, had sporadic income and lived in an inner-city urban neighborhood.

parental judgment cited by respondent simply do not, even if established, rise to the level required to show extraordinary circumstances (*see, e.g., Matter of Burghdurf v Rogers*, 233 AD2d 713, 714, *lv denied* 89 NY2d 810).

Furthermore, since respondent's custody of the child was only temporary and the record establishes that it was the understanding of Family Court and all parties, including respondent, that the child would eventually be placed in petitioner's custody, we do not agree under the particular circumstances of this case that this temporary order was sufficient in and of itself to constitute extraordinary circumstances. The protracted separation of petitioner and his child may present a closer issue (*see, Matter of Bennett v Jeffreys, supra*, at 544), but it cannot be ignored that petitioner has been seeking custody of his son, either formally or informally, since the mother's death (*see, Matter of Burghdurf v Rogers, supra*, at 715) and there is no evidence that "the psychological trauma of removal is grave enough to threaten destruction of the child" (*Matter of Bennett v Jeffreys, supra*, at 550).

The remaining issues advanced by respondent have been examined and found to be lacking in merit or unpreserved for appellate review.

Cardona, P. J., Peters, Spain and Graffeo, JJ., concur. Ordered that the order is affirmed, without costs.