■ In the Matter of ROBERT A. TUCKER, Appellant, v ERIC R. MARTIN, SR., Respondent, et al., Respondent. (Appeal No. 1.) [904 NYS2d 605]—

Appeal from an order of the Family Court, Oneida County (Brian M. Miga, J.H.O.), entered February 17, 2009 in a proceeding pursuant to Family Court Act article 6. The order dismissed the petition.

It is hereby ordered that the order so appealed from is affirmed without costs.

Memorandum: Robert A. Tucker, the petitioner in appeal No. 1 and the respondent in appeal No. 2, is the father of the child who is the subject of this custody proceeding. Eric R. Martin, Sr., a respondent in appeal No. 1 and the petitioner in appeal No. 2, was the boyfriend of the child's now-deceased mother and had lived with the child and the mother for 12 years, since the child was two years old. After the mother's death, both the father (appeal No. 1) and Martin (appeal No. 2) filed petitions seeking custody of the subject child. The father contends in appeal No. 1 that Family Court erred in dismissing his petition seeking custody of his child, and he contends in appeal No. 2 that the court erred in awarding Martin primary physical custody of the child, with joint custody with the father and Martin.

Addressing first the order in appeal No. 2, we agree with the court and the Attorney for the Child that Martin met his burden of establishing that extraordinary circumstances exist to warrant an inquiry into whether it is in the best interests of the child to award him custody (*see generally Matter of Bennett v Jeffreys*, 40 NY2d 543, 548 [1976]). Where, as here, there is no evidence that the parent surrendered, abandoned or neglected the child or is otherwise an unfit parent, the question of "[w]hat proof is sufficient to establish such equivalent but rare extraordinary circumstances cannot be precisely measured. We do know that it is not enough to show that the nonparent could do a better job of raising the child . . . Further, the fact that the parent agreed that a nonparent should have physical custody of the child . . . is not sufficient, by itself, to deprive the parent of custody" (*Matter of Michael G.B. v Angela L.B.*, 219 AD2d 289, 292-293 [1996] [internal quotation marks and citations omitted]; *see generally Matter of Corey L v Martin L*, 45 NY2d 383, 391 [1978]). On the other hand, extraordinary circumstances may be found based on prolonged separation between the parent and a child born out of wedlock, the attachment of the child to the custodian and the parent's lack of an established household (*see Matter of Isaiah O. v Andrea P.*, 287 AD2d 816,

817 [2001]; *Matter of Commissioner of Social Servs. of City of N.Y. [Sarah P.]*, 216 AD2d 387, 388 [1995]; *see generally Michael G.B.*, 219 AD2d at 293).

We reject the contention of the father with respect to both appeals that the court erred in denying what he characterizes as his motion for summary judgment seeking custody of the child. The father in fact moved for dismissal of Martin's petition seeking custody of the child pursuant to CPLR 3211 (a) (7) as well as for summary judgment on the issue of custody but submitted no evidence in support of that part of the motion seeking summary judgment. Indeed, the father appears to have premised his request for summary judgment on the issue of custody on the assumption that the court would grant that part of his motion pursuant to CPLR 3211 (a) (7). The court denied that part of the motion, however, and we conclude on the record before us that the father failed to meet his initial burden on that part of the motion seeking summary judgment, having failed to submit any evidence in support thereof (*see generally Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]).

With respect to the court's determination concerning the existence of extraordinary circumstances in appeal No. 2, we conclude that the evidence adduced at the custody hearing supports that determination. The testimony of Martin that he fulfilled a "father" role for the child is supported by the record. The record also establishes that the most familiar and comfortable setting for the child is with Martin, who was part of the only family unit known by the child from the age of two through the time of the custody hearing. Even if, as our dissenting colleagues contend, the child had expressed a desire to live with the father before the onset of the illness that led to the mother's death, the inescapable reality is that the only family truly known by the child had Martin and the now-deceased mother at its core. That family also included half-siblings with whom the child has a close relationship, and grandparents, uncles, aunts, and cousins living in the area where she resided with her mother and Martin.

Reduced to its essence, this case is one in which Martin and the mother primarily provided for the needs of the child since the age of two, and it appears that the father had only limited involvement with the child (*see Matter of McDevitt v Stimpson*, 1 AD3d 811, 812 [2003], *lv denied* 1 NY3d 509 [2004]). Separating the child from her home and what is left of the above-described family following the death of her mother and requiring her to live hundreds of miles away from that family with her father, whom she may have seen for only 20 days per year,

would undoubtably exacerbate the already significant emotional injury suffered by the child as the result of her mother's death (*see Matter of Curry v Ashby*, 129 AD2d 310, 318 [1987]). Important, too, is the fact that the separation of the child from that family would require her to attend a different school, and we note that the father implicitly conceded that it was important to allow the child to stay in the same school for her remaining four years of schooling.

We must also examine the child's prospective destination in determining whether extraordinary circumstances exist, and we are troubled by that prospective destination. The father was, by all indications, separated from his spouse at the time of the custody hearing and was earning a living managing parking lots while he pursued a bachelor's degree. The father also appeared to rely heavily on student loans for financial support and was unsure where he would live after he received his bachelor's degree, which he expected would be within approximately 18 months of the hearing. Based on those factors, as well as the factors set forth herein concerning what was effectively the separation between the father and the child since she was two years old, the child's attachment to the family unit with Martin, with whom she has resided for most of her life, and the drastic change in environment that would result from a change in physical custody, we conclude that there are extraordinary circumstances supporting the consideration of the child's best interests (*see generally Isaiah O.*, 287 AD2d at 817-818; *Michael G.B.*, 219 AD2d at 293-294; *Sarah P.*, 216 AD2d at 388).

It is well settled that, "once extraordinary circumstances are found, the court must then make the disposition that is in the best interest[s] of the child" (*Bennett*, 40 NY2d at 548), and we likewise agree with the court and the Attorney for the Child with respect to both appeals that the child's best interests are served by awarding the father and Martin joint custody of the child, with primary physical custody with Martin. In making a best interests determination, parental rights may not be "relegated to a parity with all the other surrounding circumstances in the analysis of what is best for the child" (*id.*). Indeed, "in ascertaining the child's best interest[s], the court is guided by principles which reflect a 'considered social judgment in this society respecting the family and parenthood' " (*id.* at 549, quoting *Matter of Spence-Chapin Adoption Serv. v Polk*, 29 NY2d 196, 204 [1971]). A best interests analysis is comprised of numerous factors, " 'including the continuity and stability of the existing custodial arrangement, the quality of the child's home environment and that of the [party] seeking custody, the

ability of each [party seeking custody] to provide for the child's emotional and intellectual development, the financial status and ability of each [party seeking custody] to provide for the child, and the individual needs and expressed desires of the child' " (*Matter of Michael P. v Judi P.*, 49 AD3d 1158, 1159 [2008]; *see generally Fox v Fox*, 177 AD2d 209 [1992]).

"It is well established that a trial court's determination of a child's best interests must be accorded the greatest respect . . . , and will not be disturbed if it has a sound and substantial basis in the record" (*Matter of Deborah E.C. v Shawn K.*, 63 AD3d 1724, 1725 [2009], *lv denied* 13 NY3d 710 [2009] [internal quotation marks omitted]). We conclude on the record before us that the court's custody determination has a sound and substantial basis in the record (*see generally Matter of Goossen v Goossen*, 72 AD3d 1591 [2010]; *cf. Michael P.*, 49 AD3d at 1159-1160). The child was 14 years old at the time of the hearing, and the essential components of her life, i.e., most of her relatives, her school, her physicians and her friends, are in the county in which she currently lives. By contrast, the child, who is now 16 years of age, knows no one but the father at the out-of-state location where the father resides. The record also establishes that Martin is more financially stable than the father and is better equipped to provide for the child's health and prospective postsecondary educational needs. We thus decline to disturb the court's custody determination.

Finally, with respect to appeal No. 2, the father does not challenge any issues concerning his visitation rights and has thus abandoned any issue with respect thereto (*see Ciesinski v Town of Aurora*, 202 AD2d 984 [1994]). We further note that the consolidated record contains a transcript of a proceeding held after the filing of the notice of appeal in appeal No. 1, in which the court dismissed the father's custody petition, and after the dispositional hearing in appeal No. 2. That transcript indicates that the father refused to return the child's telephone calls, kept the child's social security checks, had the child's cellular telephone disconnected and showed no interest in contacting the child. Martin, in a statement not disputed by the Attorney for the Child, characterized that behavior as "emotionally tearing [the child] apart."

All concur except Centra, J.P., and Peradotto, J., who dissent and vote to reverse in accordance with the following memorandum.

Centra, J.P., and Peradotto, J. (dissenting). We respectfully dissent inasmuch as we cannot agree with the majority that nonparent Eric R. Martin, Sr., a respondent in appeal No. 1 and

the petitioner in appeal No. 2, met his burden of establishing the requisite "extraordinary circumstances" to deprive the child's biological father, Robert A. Tucker, the petitioner in appeal No. 1 and the respondent in appeal No. 2, of custody of his daughter.

The child who is the subject of this proceeding is the daughter of the late Michele M. Mackey, a respondent in appeal No. 1, and Tucker. When the child was two years old, the mother became Martin's live-in girlfriend, and the child and the mother resided with Martin for the next 12 years, along with three of the child's half-brothers. The child was born in 1994, and in 2000 the mother was granted custody of the child, with extensive visitation to the father, pursuant to a Family Court order entered upon stipulation of the parties. After the mother passed away in 2008, both the father and Martin petitioned for custody of the child. By the order in appeal No. 1 Family Court dismissed the father's petition, and by the order in appeal No. 2 the court granted primary physical custody of the child to Martin. The father has appealed and, notably, Martin has not appeared in these appeals.

There can be no question that "as between a parent and a nonparent, the parent has a superior right to custody that cannot be denied unless the nonparent establishes that the parent has relinquished that right because of 'surrender, abandonment, persisting neglect, unfitness *or other like extraordinary circumstances*'" (*Matter of Gary G. v Roslyn P.*, 248 AD2d 980, 981 [1998] [emphasis added], quoting *Matter of Bennett v Jeffreys*, 40 NY2d 543, 544 [1976]). As the Court of Appeals stated even more forcefully in *Matter of Male Infant L.* (61 NY2d 420, 427 [1984]), "[s]o long as the parental rights have not been forfeited by gross misconduct . . . or other behavior evincing utter indifference and irresponsibility . . . , the [biological] parent may not be supplanted . . . ." "Indeed, for a court to award custody of a child to a nonparent without proof of the parent's disqualification is a denial of the parent's constitutional rights" (*Raysor v Gabbey*, 57 AD2d 437, 440 [1977], citing *Stanley v Illinois*, 405 US 645, 651 [1972]). Here, it is undisputed that the father did not surrender, abandon, or neglect the child, and both Martin and the Attorney for the Child acknowledge that the father is a fit and, indeed, a good parent. Thus, the issue before the court was whether Martin established the requisite " 'equivalent but rare extraordinary circumstance' " (*Matter of Michael G.B. v Angela L.B.*, 219 AD2d 289, 292 [1996]), which is necessary to warrant overriding the "right and responsibility of a [biological] parent to custody of her or his child" (*Bennett*, 40 NY2d at 549).

"Without a finding of the existence of extraordinary circumstances, 'the inquiry ends' and the court will not reach the issue of the best interests of the child" (*Matter of Jody H. v Lynn M.*, 43 AD3d 1318, 1318 [2007]).

We agree with the father that Martin failed to meet his burden of establishing the existence of extraordinary circumstances, as that term is defined by the Court of Appeals in *Bennett* (40 NY2d at 544; *see Matter of Judware v Judware*, 197 AD2d 752, 753 [1993]). The Attorney for the Child and Martin relied on the following circumstances in support of Martin's petition for custody: (1) the death of the mother; (2) the length of Martin's relationship with the child; (3) Martin's proximity to the child's friends and extended family; (4) the father's relocation to Pittsburgh to pursue his education; and (5) the desire of the child to remain with Martin. While we in no way seek to minimize such circumstances, we simply cannot conclude that they are "on a level with unfitness, abandonment, persistent neglect *or other 'gross misconduct' or 'grievous cause'* " (*Male Infant L.*, 61 NY2d at 429 [emphasis added]).

The death of a custodial parent is not an extraordinary circumstance sufficient to deprive a biological parent of the custody of his or her child (*see e.g. Matter of Tyrrell v Tyrrell*, 67 AD2d 247, 251 [1979], *affd* 47 NY2d 937 [1979]). While the "protracted separation" of a parent from a child may, when coupled with other factors, be sufficient to establish extraordinary circumstances (*Bennett*, 40 NY2d at 550), the record clearly establishes that there was no such separation between the father and the child in this case. Quite to the contrary, the record reflects that, since the child's birth, the father has consistently exercised biweekly visitation with the child as well as extended visitation in the summer, and has paid child support (*see generally Matter of Woodhouse v Carpenter*, 134 AD2d 924, 925 [1987]). Thus, the majority's characterization of the involvement of the father in the child's life as "limited" is simply not supported by the record. Martin testified that, before the father moved to Pittsburgh approximately 18 months before the hearing in this matter, the father exercised "75-80 percent" of his court-ordered visitation, which consisted of every other weekend, every other holiday, and two weeks each summer. Although the visitation of the father allegedly decreased after he moved to Pittsburgh, it is undisputed that he continued to maintain regular contact with the child and, indeed, the child spent three weeks with the father in Pittsburgh during the summer before the mother's death. Martin conceded that, even after the father moved to Pittsburgh to pursue his education,

the father drove to New York to visit with the child one to two times per month. On these facts, the conclusion that extraordinary circumstances exist is simply not warranted (*see Matter of Guzzey v Titus*, 220 AD2d 976 [1995], *lv denied* 87 NY2d 807 [1996]; *Woodhouse*, 134 AD2d at 924-925; *cf. Matter of Holmes v Glover*, 68 AD3d 868 [2009]; *Matter of Mace v Mace*, 45 AD3d 1193 [2007], *lv denied* 10 NY3d 701 [2008]).

As for the child's relationship with Martin, it is well established that "the disruption of a psychological bond between a child and his or her nonparental caregiver does not rise to the level of extraordinary circumstances absent 'unfitness, abandonment, persistent neglect or other gross misconduct or grievous cause' " (*Matter of Burghdurf v Rogers*, 233 AD2d 713, 715 [1996], *lv denied* 89 NY2d 810 [1997]; *see Jody H.*, 43 AD3d at 1319). Although Martin alleged in his petition that the child "would suffer emotionally if separated from [the] family [with whom] she was raised," there is simply no evidence in the record that awarding custody to the father would result in "psychological trauma . . . grave enough to threaten destruction of the child" (*Bennett*, 40 NY2d at 550). The court herein explicitly recognized that the child "loves both her father and . . . Martin," and described the child as a "wonderful, articulate young lady." Significantly, Martin candidly acknowledged that, prior to the mother's brief illness and resultant death, the child had expressed a desire to live with the father and, indeed, she chose to live with the father and attended school in Pittsburgh in January 2009. In any event, the desire of the child at the time of the hearing to remain with Martin does not constitute an extraordinary circumstance justifying an award of custody to Martin against the wishes of the father (*see People ex rel. Anderson v Mott*, 199 AD2d 961, 962 [1993]).

In our view, in upholding the court's award of custody to Martin, the majority inappropriately conflates extraordinary circumstances with a best interests determination. However, as previously noted, "[a]bsent a showing of extraordinary circumstances sufficient to deprive the [biological] parent of a superior right to custody, the question of best interests of the child is not reached" (*Woodhouse*, 134 AD2d at 925; *see Jody H.*, 43 AD3d at 1318; *Tyrrell*, 67 AD2d at 248). In its analysis of extraordinary circumstances, the majority discusses the school that the child would attend if custody were awarded to the father, the father's financial situation, and the father's home environment. While such considerations are relevant in conducting a best interests analysis, we submit that they are wholly insufficient to establish extraordinary circumstances sufficient to divest a biological

parent of custody of his or her child. As the Court of Appeals stated in *Bennett* (40 NY2d at 548), "neither decisional rule nor statute can displace a fit parent because someone else could do a 'better job' of raising the child in the view of the court . . . , so long as the parent . . . ha[s] not forfeited [his or her] 'rights' by surrender, abandonment, unfitness, persisting neglect or other extraordinary circumstance. These 'rights' are not so much 'rights,' but responsibilities which reflect the view . . . that, *except when disqualified or displaced by extraordinary circumstances*, parents are generally best qualified to care for their own children and therefore entitled to do so" (emphasis added). In any event, we note that the record reflects that the father has an established residence with a separate bedroom for the child, and that he is able to provide for the child financially through his full-time employment, financial aid, and public assistance.

Finally, we conclude that the majority's reliance on allegations made by Martin during an informal proceeding after the hearing is inappropriate. Those statements were neither made under oath nor elicited by the court, the father was not present to rebut them, and the father's attorney repeatedly objected to the court's consideration of the statements. We note that the unsupported statement relied upon by the majority to the effect that the father's posthearing behavior was "emotionally tearing [the child] apart" was made by Martin, not the child or the Attorney for the Child, and there is no indication in the record that the Attorney for the Child agreed with Martin's characterization of the father's posthearing behavior.

We therefore would reverse the order in appeal No. 1, grant the father's petition, and award sole custody of the child to the father, and we would reverse the order in appeal No. 2 and deny Martin's petition. Present—Centra, J.P., Fahey, Peradotto, Lindley and Pine, JJ.