■ In the Matter of DONNA NOTLEY, Appellant, v KEITH SCHMEID, Respondent. [632 NYS2d 195] —In a custody proceeding pursuant to Family Court Act article 6, the mother appeals from an order of the Family Court, Nassau County (Medowar, J.), dated November 8, 1993, which directed that (1) the father shall retain physical custody of the parties' son, and (2) the parties obtain parental counseling.

Ordered that the order is reversed, on the facts, and as a matter of discretion in the interest of justice, without costs or disbursements, custody of the child is awarded to the mother, and the matter is remitted to the Family Court, Nassau County, for a hearing on the issue of visitation for the father.

The parties to this action were married in February of 1985, after which they had two children, Gina, born in June of 1985 and Anthony, born in May of 1988. In March of 1990, the parties were divorced, at which time the mother retained physical custody of Gina and the father retained physical custody of Anthony. In May of 1990, the mother commenced this proceeding for a modification of the custody arrangement, seeking custody of Anthony. At that time, the mother alleged that (1) the father's fiancée, with whom the father resided, was physically abusing Anthony, and (2) the father was interfering with the mother's relationship with Anthony by prohibiting her, for months at a time, from visiting with him, and by conveying his

negative attitude toward her to Anthony. A trial was held on this matter, after which the court ordered that the father would retain physical custody of Anthony and that the parties obtain parental counseling. The court also directed that if the father married his fiancée, who the court found to have struck the child on several occasions, she should obtain counseling. In reaching its decision, the court rejected the recommendation of the Law Guardian, who believed that it would be in Anthony's best interests to live with his mother and siblings (in addition to Anthony and Gina, the mother had a daughter from her first marriage and later a son from her third marriage), and instead, relied on the recommendation of the Department of Probation, which had never observed Anthony in the presence of the mother and her present husband prior to making its recommendation. We find that it was an improvident exercise of discretion for the court to deny the mother's petition for a change of custody.

Among the factors to be considered by the court in making a custody determination are: "the parental guidance the custodial parent provides for the child; the ability of each parent to provide for the child's emotional and intellectual development; the financial status and ability of each parent to provide for the child [and] the overall relative fitness of the parties" *(Matter of Rosiana C. v Pierre S.,* 191 AD2d 432, 434; *see also, Eschbach v Eschbach,* 56 NY2d 167, 172-173). Additionally, "the effect that an award of custody to one parent might have on the child's relationship with the other parent" is also a proper and relevant consideration *(see, Bliss v Ach,* 56 NY2d 995, 998). Along a similar vein, it has been stated, regarding the sanctity of the relationship between the noncustodial parent and the child, that "any interference with [this relationship] by the custodial parent has been said to be 'an act so inconsistent with the best interests of the children as to, per se, raise a strong probability that the [offending party] is unfit to act as custodial parent' " *(Daghir v Daghir,* 82 AD2d 191, 194, *affd* 56 NY2d 938).

The evidence adduced at trial indicated that while the father and his fiancée both exhibited violent tendencies, there was no evidence of any violence in the mother's home. Moreover, the evidence also indicated that for lengthy periods of times, the father denied the mother visitation, which consequently deprived Anthony of the companionship of his brother and sisters as well. Additionally, the father, by his own admissions, had not even attempted to explain to Anthony who his real mother was, and in fact the personnel at Anthony's school

believed that the father's fiancée was Anthony's mother. Finally, the father not only admitted to referring to the mother in derogatory terms in Anthony's presence, but also encouraged Anthony to mimic such language. Based on this, it is clear that the father's interference with Anthony's relationship with both his mother and siblings, coupled with the volatile nature of his relationship with his fiancée, as well as his fiancée's problems controlling her temper, warrant a change of residential custody from the father to the mother *(see, Young v Young,* 212 AD2d 114).

Furthermore, the court was without authority to order counseling for the parties as an implied condition of awarding custody and visitation *(see, Matter of Tito G. v Thelma G.,* 187 AD2d 651, 652; *Ramshaw v Ramshaw,* 186 AD2d 243). Bracken, J. P., Sullivan, Friedmann and Krausman, JJ., concur.