[746 NYS2d 284]

RUSSELL O. VERNON, Respondent, v VICTORIA M. VERNON, Appellant.

First Department, August 8, 2002

## APPEARANCES OF COUNSEL

*Aaron Weitz* for respondent.

*John Patrick Rudden* for appellant.

## OPINION OF THE COURT

MAZZARELLI, J.

Plaintiff Russell Vernon (Russell) married defendant Dr. Victoria Vernon (Victoria) in June 1985 in New York. They have one child, Alexandra Vernon (Alex), who was born on July 26, 1990 in New York. In June 1991, Russell commenced a divorce proceeding, also in New York, which was settled on the record before the trial court in July 1991.

In December 1992, the parties executed a settlement agreement, the terms of which were incorporated by reference, but not merged into, a subsequent judgment of divorce. Paragraph 11.7 of the settlement agreement provided:

> "It is expressly understood and agreed that so long as one of the parties herein is a resident of the State of New York, the Supreme Court of the State of New York shall retain personal jurisdiction of the parties, of the child, and of the case, for all purposes."

Earlier in 1992, while the divorce was pending, Victoria had moved to Louisiana and had sought, unsuccessfully, to have jurisdiction over the matter transferred to that state. Pursuant to the divorce judgment, Victoria was granted sole legal and physical custody of Alex, and Russell was granted specified visitation.

In January 1993, Victoria moved to Wyoming with Alex. Russell claims that Victoria engaged in an elaborate scheme to conceal her relocation from him until August 1993. In November 1993, Russell attempted to modify the original divorce judgment, seeking sole custody of Alex. Victoria responded by moving to dismiss the New York proceeding on the ground of forum non conveniens, and by endeavoring to commence a parallel action in Wyoming. Her attempt to convince the New York court to cede jurisdiction to Wyoming failed. This Court affirmed that holding, stating:

"Defendant has failed to demonstrate that the court was unwarranted in retaining jurisdiction of this custody dispute under either Domestic Relations Law article 5-A or 28 USC § 1738A so as to avoid enforcement of the forum selection clause in the parties' settlement agreement, incorporated into the judgment of divorce.

"The parties expressly agreed that New York would continue to have personal jurisdiction over them for all purposes, including custody issues, a clause that was accepted by defendant with full knowledge that she would be residing with the child in another State. Moreover, her Wyoming action was commenced some four months after the New York proceeding, rendering Domestic Relations Law § 75-g inapplicable to the present matter. Similarly, defendant has not established that Wyoming is a more appropriate forum than New York for hearing the instant matter (see, Domestic Relations Law § 75-h)." (Vernon v Vernon, 210 AD2d 170, 170-171.)

The trial court referred Russell's request for sole custody of Alex to a referee in February 1994, to explore the best interests of the child. In October 1997, the referee issued a report concluding that although Victoria had tried to alienate Alex's affections towards her father, there had not been substantial interference with Russell's visitation rights. The report also concluded that it was in the best interests of the child, who was then seven years old, to remain with her mother, as that was the only home she had ever known. The referee's report and recommendations were never formally adopted by the trial court. Instead, in April 1998, Russell and Victoria entered into a court-ordered stipulation which provided that Victoria would retain sole custody of Alex. The stipulation granted Russell liberal visitation rights, allowed Alex to have a private telephone installed in her room at Russell's expense, and concluded that "except as modified * * *, the parties hereby ratify and reconfirm each and every provision and term of the agreement of the parties dated December 15, 1992 which shall remain in full force and effect."

In August 1998, Victoria commenced another proceeding in Wyoming, to change the visitation provisions of the April 1998 stipulation. Russell moved in New York to enjoin the Wyoming proceeding, which Victoria thereafter discontinued. Russell was awarded attorneys' fees for the costs of these proceedings.

The 1992 settlement agreement and the April 1998 stipulation both provided, inter alia, that Russell was scheduled to have his daughter visit him in New York at various times during each year. However, by January 2000, Victoria had attempted to curtail or cancel over six of Alex's trips. For example, she made last-minute calls stating that the child was sick, or told Russell that she could not convince Alex to get on the flight to New York. In January 2000, Russell moved to hold Victoria in contempt before a New York court, for violations of the visitation provisions of the April 1998 stipulation. Victoria cross-moved, in March 2000, pursuant to Domestic Relations Law § 75-h, to have the matter transferred to Wyoming.

In June 2000, the court reappointed Dr. Ava Siegler, a forensic psychologist, to determine the cause of the ongoing conflict between the parties. Dr. Siegler was familiar with the couple and their child, because she had been appointed at the outset of the proceedings to help set up developmentally appropriate visitation for the father and child in 1992. Throughout the succeeding years, this doctor was reappointed a number of times to help resolve difficulties surrounding visitation, and to report on the validity of other allegations made by the parents against each other. In October 2000, after reviewing the most recent, extensive report of the psychologist, the court declined to transfer the matter to Wyoming, and set a date for a hearing in the contempt proceeding.

On February 14, 2001, Victoria again moved to have the case transferred to Wyoming, arguing that New York lacked subject matter jurisdiction, or, alternatively, that the court should decline to exercise jurisdiction on the ground of forum non conveniens. The court denied Victoria's application, and in July 2001 a hearing on the contempt motion was commenced.

The first witness at the hearing was Dr. Siegler. A year earlier, in the summer of 2000, Dr. Siegler had interviewed Russell, Victoria, Alex, Russell's present wife, Joanne, and Victoria's adopted daughter, Clare, and had prepared an extensive report. This report was entered into evidence at the hearing. Dr. Siegler testified that she was originally assigned to the case in 1992, and that when she prepared her report in 2000, she attributed the child's protestations about visiting her father in New York to "an ongoing and relentless alienation to which the child is subjected based upon the mother's distrust, anxiety and anger at the father." The doctor recommended that Victoria be encouraged to move to the northeast, that if relocation were not possible Alex should continue to reside

with her mother in Wyoming, but that "the court should directly inform Dr. Vernon that if visitation is not complied with * * *, a change in custody would be considered." At the time of the 2001 contempt hearing, Dr. Siegler had not reinterviewed the parties. However, she opined that, based upon the events which had transpired in the year since she issued her most recent report, "we cannot count on Dr. Victoria Vernon to comply with the court's already ordered visitation and custody arrangements, and, so, we would have to have some kind of monitoring system or shift in custody if we expected a change."

In July 2001, the court informed Victoria's lawyer that it would hear testimony to determine whether a change in custody was in the best interests of the child. It also strongly urged counsel to advise his client to come to New York to testify, emphasizing that it intended to make a determination as to all of the issues "that summer."

On August 3, 2001, Russell, his wife, his sister-in-law and his mother testified about Alex's visits to New York. After plaintiff rested, Victoria's attorney advised the court that it would be impossible for his client to appear in New York. He also stated that the relevant witnesses his client wished to call were all located in Wyoming and would not come to New York to testify.

The court found that Victoria's refusal to appear in New York to testify demonstrated that she was "someone who just utterly has contempt for the authority of this Court and this proceeding and, indeed, for the right of her child to have a relationship with her father." The court found that integral to the obligation of a custodial parent was the duty to afford the child a loving relationship with the noncustodial parent. It concluded that Victoria "has acted so inimical to this child's welfare that this Court finds she is unfit to be Alex's custodial parent and orders a change of custody immediately of Alex to Russell Vernon." A written order changing custody to Russell was entered on August 22, 2001. This appeal ensued.

Defendant challenges the jurisdiction of the courts of New York, relying on the Federal Parental Kidnaping Prevention Act (28 USC § 1738A [PKPA]). The section of the PKPA which addresses the issue of continuing jurisdiction in a state where a child custody order has previously been entered (28 USC § 1738A [d]) provides:

> "The jurisdiction of a court of a State which has made a child custody or visitation determination

consistently with the provisions of this section continues as long as the requirement of subsection (c) (1) of this section continues to be met and such State remains the residence of the child or of any contestant."

Because New York has been Russell's residence throughout these proceedings, the second requirement, residence of a contestant, is met. Moreover, subsection (c) (1) provides: "A child custody or visitation determination made by a court of a State is consistent with the provisions of this section only if—(1) such court has jurisdiction under the law of such State." At the time of this proceeding, the Uniform Child Custody Jurisdiction Act (UCCJA), codified in article 5-A of the Domestic Relations Law, established the predicates for subject matter and in personam jurisdiction in custody disputes (Domestic Relations Law § 75-d). More recently, the UCCJA has been repealed and replaced by the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA).[1] These amendments to the New York legislation have no bearing on the outcome of this appeal, and, in any event, a review of the facts of this case under the revised legislation would not change the result.

As relevant here, the jurisdictional requirements set out in former Domestic Relations Law § 75-d (1) (b) are satisfied by a showing that New York has a substantial connection with the parents or the child and that there is substantial evidence within the state respecting the child's future care.[2]

Since the child was born here, the parties were married and divorced here, the father has continued to reside here, and the child has visited him here, the substantial connection test is met (*see, Corkins v Corkins*, 253 AD2d 783; *Matter of Irwin v Schmidt*, 236 AD2d 401, *lv denied* 89 NY2d 815). In addition,

---

**1.** The UCCJEA was enacted to harmonize areas of conflict between the prior UCCJA and Federal Parental Kidnaping Prevention Act (28 USC § 1738A). The UCCJEA also incorporates protections provided for victims of domestic violence, consistent with the recently enacted Federal Violence Against Women Act ([VAWA] 18 USC §§ 2265-2266). For a comprehensive discussion of the new legislation, consult the spring 2002 issue of the New York State Bar Association Family Law Review (Barbara Ellen Handschu, *Important Interstate [International] Custody Law Enacted: Essentials About the UCCJEA*, 34 NY St Bar Assn Fam L Rev 12 [2002]).

**2.** This section affords jurisdiction in New York when:

"it is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is within the jurisdiction of the court substantial evidence concerning the child's present or future care, protection, training, and personal relationships."

the court heard testimony from the father and his family at the hearing, showing that substantial evidence exists within New York regarding the issue of the child's future care. Thus, New York properly asserted subject matter jurisdiction to determine this custody dispute.

Turning to the issue of whether it was in the best interests of Alex for the court to have granted her father sole custody of her, we also agree with the trial court that a change of custody was necessary. Initially, it is evident from Victoria's repeated, willful frustration of Russell's visitation rights and from the expert testimony, that defendant is intent on thwarting any relationship between her daughter and the child's father (see, *Bliss v Ach*, 56 NY2d 995 [court properly considered the effect an award of custody to one parent might have on the child's relationship with the other parent]). It is also plain that it is contrary to the child's best interest to be deprived of a relationship with both of her parents. Indeed, it has been recognized that a parent's interference with the relationship between a child and the noncustodial parent is "an act so inconsistent with the best interests of the child[ ] as to, per se, raise a strong probability that the [offending party] is unfit to act as custodial parent" (*Entwistle v Entwistle*, 61 AD2d 380, 384-385, *appeal dismissed* 44 NY2d 851; *accord, Matter of Sandra C. v Christian D.*, 244 AD2d 551; *Matter of Notley v Schmeid*, 220 AD2d 509, 510; *Young v Young*, 212 AD2d 114; *Daghir v Daghir*, 82 AD2d 191, 194, *affd* 56 NY2d 938).

Moreover, "[t]hat a change in custody may prove temporarily disruptive to the child[ ] is not determinative, for all changes in custody are disruptive" (*Matter of Nehra v Uhlar*, 43 NY2d 242, 248). In addition,

> "Although 'priority * * * is accorded the first award' * * * it is nevertheless 'but one factor to be weighed by the court in deciding whether a change of custody is warranted' * * *. Further, where the first award is the result of a stipulation, as here, it is entitled to less weight than a disposition after a plenary trial * * *." (*Matter of Carl J.B. v Dorothy T.*, 186 AD2d 736, 736-737 [internal citations omitted].)

In view of Victoria's adamant refusal to cooperate with visitation, the only means of vindicating the child's very substantial and, under the particular circumstances presented, overriding

interest in having a relationship with both parents, is to award legal and physical custody of the child solely to her father Russell. He has consistently demonstrated a mature understanding of the need for appropriate parental access and a willingness to make the sometimes difficult compromises necessary for such access to occur (*see, Nehra, supra*).

Accordingly, the order of the Supreme Court, New York County (Jacqueline Silbermann, J.), entered August 22, 2001, which granted plaintiff's motion to hold defendant in contempt of court for violation of access and visitation provisions of, inter alia, a judgment of divorce dated December 16, 1992, and directed that said divorce judgment be modified to provide that plaintiff is to have sole legal and physical custody of the parties' minor child, should be affirmed, without costs.

WILLIAMS, P.J., SAXE, LERNER and MARLOW, JJ., concur.

Order, Supreme Court, New York County, entered August 22, 2001, affirmed, without costs.