OPINION OF THE COURT
Judith J. Gische, J.
Petitioner and respondent were same sex domestic partners who lived together as a family, in a common household, from May 1993 until the fall of 2001. During a time when their family was intact, they planned to raise children together. On (date deleted) 1998, respondent gave birth to a son, L.M.H., conceived through artificial insemination. The parties, thereafter, filed a joint application to have petitioner legally adopt L.M.H. (Matter of Jacob, 86 NY2d 651 [1995].) That application was granted on November 7, 1999.
Respondent then conceived a second child, also through artificial insemination. S.M.H., a daughter, was born (date deleted) 2000. Although the parties were making plans to have petitioner adopt S.M.H., their relationship ended, as did the adoption process.
After the parties separated, they worked out voluntary arrangements by which both children spent time with each party. Such arrangements notwithstanding, the parties had disputes about the rearing and sharing of the children. Consequently, in November 2003, petitioner filed this habeas corpus proceeding seeking custody and access to both L.M.H. and S.M.H. (Domestic Relations Law § 240). Simultaneously, she brought the instant motion seeking: (A) temporary physical custody of L.M.H. and S.M.H., with visitation to respondent; (B) temporary child support; (C) a forensic evaluation; (D) the appointment of a guardian ad litem; and (E) pendente lite attorney’s fees. Respondent cross-moved to dismiss the petition insofar as it seeks custody and/or visitation with S.M.H. Respondent also seeks sole temporary and permanent custody of L.M.H., the appointment of a law guardian, a reduced visitation schedule between petitioner and L.M.H. and to change the name of the caption of the case to “Anonymous v Anonymous.”
It is clear that because petitioner legally adopted L.M.H., the parties’ custody/visitation dispute about him will be resolved in accordance with the “best interest” legal standard that otherwise governs such disputes between parents. (Domestic Relations Law § 117 [1] [c].) Determination of the issue of L.M.H.’s permanent custody, however, must await trial. (Anstett *363 v Wolcott, 94 AD2d 692 [2d Dept 1983].) The parties have already agreed to the retention of a forensic evaluator in connection with their dispute about him.
The court has also, on consent of the parties, already appointed a law guardian for both children. Unless and until the petition for custody/visitation of S.M.H. is dismissed, both children need legal representation in this proceeding. (See e.g. Matter of Cleophous P. v Latrice M.R., 299 AD2d 936 [4th Dept 2002]; Matter of Phyllis W v Bernie X., 203 AD2d 694 [3d Dept 1994].)
Although the parties agreed that, for the sake of the children, the caption should be designated “Anonymous v Anonymous,” the court has refused to effectuate their agreement. There is nothing more or less damaging to the children in this case than what may be present in any other custody/visitation dispute. The children’s privacy interests can be adequately protected by the redaction of their names and dates of birth in the court’s orders and decisions. (See Commission on Public Access to Court Records, Report to Chief Judge of State of New York [Feb. 2004] chttp ://www.nycourts. gov/ip/publicaccess/Report_PublicAccess_ CourtRecords.pdf>, cached at <http://www.courts.state.ny.us/ reporter/webdocs/report_publicaccess_courtrecords.pdf>.)[2]
The parties have worked out an access schedule for petitioner to spend time with L.M.H., pending this court’s decision on these motions. Although both children used to visit petitioner, once this motion was brought, respondent refused to voluntarily let S.M.H. visit petitioner anymore.
Thus, the issues for consideration on these motions are: setting temporary custody of and parental access to L.M.H.; whether the petition should be dismissed insofar as plaintiff seeks rights to S.M.H.; if the petition as to S.M.H. is not dismissed, then the court must decide the issues of temporary custody of and parental access to S.M.H. Also before the court are the issues of temporary child support and interim legal fees.
Discussion
A. Motion to Dismiss
Respondent claims that petitioner is a legal stranger to S.M.H., and that she lacks standing to seek custody or access rights to respondent’s biological child, S.M.H. Respondent fur *364 ther claims that her status as a fit biological parent gives her the absolute discretion to decide with whom her daughter will have contact. Respondent, therefore, seeks a dismissal of the petition insofar as it seeks relief regarding S.M.H. Petitioner opposes the cross motion for dismissal, claiming that she has standing to seek custody/visitation under the extraordinary circumstances doctrine and, alternatively, under principles of equitable estoppel. The Law Guardian separately opposes the cross motion to dismiss, arguing that under the doctrine of parens patriae the court should consider the interests of her client, L.M.H., as S.M.H.’s sibling, in addressing the parental/custody issues between these parties on the basis of best interests.
The parties’ factual accounts of their home life together, the decision for respondent to bear children, and the participation and responsibilities each had for raising the children both before and after their separation, are sharply disputed. It is black letter law, however, that in considering a motion to dismiss, the court is to presume the truth of all of the allegations in the challenged pleadings and resolve all inferences which may reasonably flow therefrom in favor of the nonmovant. (Cron v Hargro Fabrics, 91 NY2d 362 [1998]; Sanders v Winship, 57 NY2d 391 [1982].)
Briefly stated, petitioner claims the following: That the parties were same sex domestic partners living together from May 1993 through November 2001. They were married in a religious ceremony on (date deleted) 1996 and divorced, petitioner having received a Get on (date deleted) 2003. When their relationship was intact, the parties both agreed that they would raise a family. In furtherance of that plan, respondent was artificially inseminated. Petitioner accompanied respondent at the insemination appointments and prenatal visits. L.M.H. was born (date deleted) 1998, and petitioner was with respondent at the hospital when she gave birth. The parties jointly filed a petition to have respondent legally adopt L.M.H. That petition was granted on (date deleted) 1999.
Petitioner alleges that the parties jointly planned to have a second child. Respondent again went through the process of artificial insemination. Petitioner attended the insemination and prenatal visits for the second child. On (date deleted) 2000, S.M.H. was born. Steps were taken to have petitioner also adopt S.M.H., which included the retention of an attorney, but the adoption was unilaterally stopped by respondent after the parties’ personal relationship ended.
*365 Petitioner claims that after the children were born, while the parties lived together, she was the primary caregiver to both children. Petitioner claims that respondent worked more than full time as a partner in a major law firm, while petitioner only worked part time, so that she could be at home with the children. Both children refer to petitioner and respondent by parent-like names. Petitioner is “Mama” and respondent is “Mommy.”
After the parties separated, they shared time with the children. Petitioner claims that she regularly had both children with her 6 out of every 14 days. She further claims that notwithstanding the time she has with the children, respondent has maliciously interfered with petitioner’s relationship with them.
According to statute, there are only three categories of persons in New York State who can seek custody or visitation with children. They are parents, siblings and grandparents. (Domestic Relations Law §§ 70, 71, 72, 240; Perry-Rogers v Fasano, 276 AD2d 67, 74 [1st Dept 2000].) The Court of Appeals of this state has long recognized that biological or legal strangers to a child have no standing under these statutes. (Alison D. v Virginia M., 77 NY2d 651 [1991]; Ronald FF. v Cindy GG., 70 NY2d 141 [1987].)
In the seminal case of Alison D. (supra), the Court of Appeals rejected, over a strong dissent by then Associate Judge Judith Kaye, the argument that the definition of “parent” under the New York state statutes included de facto parenthood or a parent-like relationship. Alison D., like the case at bar, involved a domestic partner who had acted and been treated as a parent to the subject child. The Court held (at 657):
“Section 70 gives parents the right to bring proceedings to ensure their proper exercise of their care, custody and control . . . We decline petitioner’s invitation to read the term parent in section 70 to include categories of nonparents who have developed a relationship with a child or who have had prior relationships with a child’s parents and who wish to continue visitation with the child . . . While one may dispute in an individual case whether it would be beneficial to a child to have continued contact with a nonparent, the Legislature did not in section 70 give such nonparent the opportunity to compel a fit parent to allow them to do so.” (Emphasis added.)
*366 Subsequent to the Court of Appeals decision in Alison D., the United States decided the seminal case of Troxel v Granville (530 US 57 [2000]). The United States Supreme Court held that a Washington State statute, which gave any person the right to petition for visitation, could not be relied upon to order visitation with grandparents, over the objections of a fit biological mother. According to the Court, the statute as applied, violated the mother’s fundamental constitutional right to make decisions concerning the rearing of her own daughters. The Court viewed a parent’s interest in the care, custody and control of his or her own children as a liberty interest protected under the 14th Amendment of the United States Constitution. Troxel (supra) strongly supports, from a constitutional perspective, the Court of Appeals’ narrow definition of “parents” for purposes of standing in custody cases.[3]
1. Extraordinary Circumstances Exception
Notwithstanding Alison D. (supra), the courts have long recognized that there are extraordinary circumstances when a third party may assert rights over a child, without the consent of the biological parents. (Matter of Dickson v Lascaris, 53 NY2d 204 [1981]; Matter of Bennett v Jeffreys, 40 NY2d 543 [1976]; Matter of Lynda A.H. v Diane T.O., 243 AD2d 24 [4th Dept 1998].) Once a threshold finding of extraordinary circumstances is made, then the court may proceed to decide the underlying custody/visitation disputes applying the conventional “best interest” standard.
Petitioner claims that extraordinary circumstances exist in this case. This court disagrees.
Extraordinary circumstances are construed narrowly by the courts because, absent grievous cause or necessity, there are constitutional prohibitions against supplanting the decisions of parents, even in those cases where the court can make a better decision than the parent. (Matter of Bennett v Jeffreys, supra.) Indeed, Troxel (supra) underscores the constitutional restrictions limiting the application of “extraordinary circumstances” so as not to intrude on the rights of parents. Circumstances *367 justifying an intrusion on parental control are: fault or omission seriously affecting the welfare of the child, preserving the right of a child to be free from physical harm, illness or death, and the child’s right to education. The state may not deprive a parent of the custody of a child absent surrender, abandonment, persistent neglect, unfitness or other, like, extraordinary circumstances. (Matter of Michael G.B. v Angela L.B., 219 AD2d 289 [4th Dept 1996]; see also Scheinkman, New York Law of Domestic Relations § 21:15, 2003 Pocket Part [12 West’s NY Prac Series 1996].)
Petitioner’s allegations, even when viewed in their most favorable light, do not rise to the level of extraordinary circumstances. There simply are no allegations of surrender, abandonment or persistent neglect by respondent vis-á-vis S.M.H. In this regard, petitioner’s reliance on Doe v Doe (92 Misc 2d 184 [Sup Ct, NY County 1977]) is misplaced, because there were facts establishing grievous cause, including facts of abandonment and neglect in that case.
Petitioner alleges that respondent is unfit. The only “facts” relied upon by her, however, to reach such legal conclusion are that respondent is withholding the children from petitioner. Fitness in the context of whether “extraordinary circumstances” exist, however, turns upon whether a parent is equipped with the basic parenting skills necessary to ensure that the child will be fed, clothed, housed, educated and loved. (See Hanna v Hanna, 267 AD2d 903 [3d Dept 1999].) Clearly respondent is a fit parent when measured against such yardstick. Cases relied upon by petitioner which take into consideration a parent’s withholding of a child in deciding custodial “fitness,” do not command a different result because they are considering “relative” fitness, when both parents have an equal right to custody. (See e.g. Vernon v Vernon, 296 AD2d 186 [1st Dept 2002] [there were no standing issues but only a best interest analysis on an application to change custody].) Relative fitness under a best interest analysis is different than the “basic fitness” demanded of a parent, which if not met, may constitute extraordinary circumstances. (See e.g. Matter of Kaleb U, 280 AD2d 710 [3d Dept 2001]; Matter of Terrance G., 190 Misc 2d 224 [Fam Ct, Queens County 2001].) The same analytical problem exists with respect to petitioner’s reliance on case law that deals with the separation of siblings. The separation of siblings is frequently a best interest consideration. It does not, however, in itself, constitute an extraordinary circumstance. (See Matter of Gary G. v Roslyn B, 248 AD2d 980 [1st Dept 1998].)
*368 2. Equitable Estoppel
Petitioner argues, alternatively, that even in the aftermath of Alison D., the legal doctrine of equitable estoppel precludes the respondent in this case from disclaiming petitioner’s parenthood of S.M.H. Both before and after Alison D. (supra), a body of case law developed, embracing principles of equitable estoppel, as a justifiable basis to provide custody and/or visitation rights to parties who could be considered legal strangers. (See Matter of Gilbert A. v Laura A., 261 AD2d 886 [4th Dept 1999];[4] Jean Maby H. v Joseph H., 246 AD2d 282 [2d Dept 1998]; Matter of Christopher S. v Ann Marie S., 173 Misc 2d 824 [Fam Ct, Dutchess County 1997].)
Equitable estoppel prevents the enforcement of rights which would work a fraud or injustice upon the person against whom enforcement is sought and who, in justifiable reliance upon the opposing parties’ words or conduct, has been misled into acting upon the belief that such enforcement would not be sought. (Jean Maby H. v Joseph H. at 285.) The doctrine has been invoked to prevent a biological parent from denying visitation to a legal stranger in cases where the biological parent actively nurtured and encouraged a parent-child like relationship with such legal stranger.
Presently, three of the four departments of the Appellate Division of this state have considered whether the doctrine of equitable estoppel still exists to establish standing rights for a non-parent after Alison D. Every department has considered the issue except for the First Department, the department in which this court sits.[5] Each of the other departments has held that after Alison D., the doctrine of equitable estoppel no longer exists to confer standing on nonparents to seek custody or visitation. (Matter of Janis C. v Christine T, 294 AD2d 496 [2d Dept 2002]; Matter of Multari v Sorrell, 287 AD2d 764 [3d Dept 2001]; Matter of Lynda A.H. v Diane T.O., 243 AD2d 24 [4th Dept 1998]. )[6]
*369 These holdings, however, are not without some controversy. Multari (supra) was decided only with a plurality of three Justices in the Third Department. The fourth Justice concurred in the result, but expressly rejected the holding that equitable estoppel was no longer a viable doctrine to confer standing on a nonparent in appropriate circumstances. (Multari v Sorrell, supra at 768.)
Adding to the controversy are certain inconsistencies among Second Department appellate cases. Thus, subsequent to Alison D., the Second Department decided the case of Jean Maby H. v Joseph H. (246 AD2d 282 [2d Dept 1998]). In Jean Maby H., the Court recognized the doctrine of equitable estoppel to confer standing on a legal stranger seeking visitation against the wishes of a fit biological parent. The nonparent had been held out as the child’s parent by the biological parent. The ruling in Jean Maby H. (supra) is completely contrary to, and in this court’s opinion irreconcilable with, the subsequent Second Department case of Janis C. v Christine T. (supra). Jean Maby H., however, stands alone while Janis C. reflects other, more recent, Second Department appellate cases denying standing in circumstances similar to those at bar. (Matter of Lee PS. v Lisa L., 301 AD2d 606 [2d Dept 2003]; Matter of Anonymous v Anonymous, 302 AD2d 378 [2d Dept 2003]; Matter of Charles v Charles, 296 AD2d 547 [2d Dept 2002]; Matter of Speed v Robins, 288 AD2d 479 [2d Dept 2001].)
Notwithstanding that there is no First Department ruling on this issue, the doctrine of stare decisis requires this court to follow the precedents on point established by the Appellate Division for any of the three other departments. (See Newman and Ahmuty, Jr., Appellate Practice, In the Absence of a Precedent From an Appellate Division, NYLJ, Dec. 4, 2002, at 3, col 1.) The current state of law among the Second, Third and Fourth Departments is that there is no doctrine of equitable estoppel that is available to confer standing on a legal stranger to seek custody or visitation.
Changes, if any, to the existing law must be made by either the Legislature or higher courts than this one.
3. The Parens Patriae Doctrine and the Rights of the Child
The Law Guardian urges a more child-centered approach in deciding whether standing should be conferred upon petitioner *370 to allow her to seek custody of both children and not just L.M.H. In particular, she argues that L.M.H. has a right and need to have his sister’s custody determined on the same basis as his own. The Law Guardian relies upon the doctrine of parens patriae as the authority for such court intervention against the wishes of the biological parent.
Certainly a recurring theme throughout all of these standing cases is the injustice they work upon children. In almost all of these cases it is claimed that the children have established family-like relationships and emotional ties to the nonparent.
The doctrine of parens patriae, however, cannot trump a legal parent’s constitutional right to the care and custody of his or her own children. Parens patriae allows the state to care for children who do not have proper care and custody from their natural parents. It is not, however, a basis to interfere in relationships between fit parents and their children. (Santosky v Kramer, 455 US 745, 758 [1982]; Stanley v Illinois, 405 US 645, 652 [1972]; Matter of Lawrence Children, 1 Misc 3d 156 [Fam Ct, Kings County 2003]; Matter of Sarah B., 2003 NY Slip Op 50703[U] [Fam Ct, Kings County 2003].) Absent unfitness or similar extraordinary circumstances, the court cannot step in merely because it believes that the decisions a biological parent makes are wrong, or that better decisions can be made for children.
The court further notes that there are some ground-breaking lower court decisions examining the child’s own constitutional rights to associate with third parties in contravention of their parents’ wishes. (See Webster v Ryan, 189 Misc 2d 86 [Fam Ct, Albany County 2001].) No constitutional issues of this sort were raised in this case and it is otherwise unclear whether they exist at all, let alone for a child of tender years. (See Matter of Harriet II. v Alex LL., 292 AD2d 92 [3d Dept 2002].)
The court, therefore, grants the cross motion to dismiss the petition regarding S.M.H. The issues of temporary custody of and visitation with S.M.H. have, consequently, been rendered moot.
B. Temporary Access and Custody of L.M.H.
Both parties stand on equal footing with regard to the custody dispute surrounding L.M.H. Neither party has a greater or presumptive right to custody of L.M.H. (Domestic Relations Law § 240.) The parties (and the Law Guardian) have each observed that L.M.H. is presently exhibiting some distressing *371 behaviors. The reasons proffered for such behavior, however, are speculative. While petitioner insists that respondent is telling the child things about this proceeding and that her decision to withhold S.M.H. from the visitations is causing L.M.H. great distress, respondent insists that it is petitioner who is causing L.M.H.’s problems, and that he also has problems with transitions in general. Respondent, therefore, seeks that petitioner have less time with L.M.H. Clearly at this early point in the proceeding there is insufficient information for the court to decide whether either (or none) of these versions of events is correct.
Given the present circumstances, the more conservative approach is to keep in place the access schedule that existed before this action was instituted. Thus, petitioner shall have access to L.M.H. 6 out of every 14 days. The parties are to work out the particular schedule. If no schedule is worked out, then the court will make an order with a specific schedule at the next adjourned date of this matter.
Neither parent, however, is given temporary legal custody of L.M.H. In the interim period, L.M.H. shall continue at his same school, with his same health care providers. He shall continue to be educated religiously in the same manner he is currently being educated. Any changes in any of these three critical areas must be jointly agreed to by the parties. In terms of any other major decision making, including summer plans, etc., the parties must consult and agree, during this interim period, unless there is an emergency. In the event of an emergency, the parent exercising access rights at the particular time of the emergency shall make the decision.
C. Temporary Child Support
Petitioner seeks temporary child support. Since the petition for relief as to S.M.H. has been dismissed, the court considers her request in terms of L.M.H. only.
Child support is an obligation payable to the parent having primary physical custody by the parent who does not have primary physical custody. (Domestic Relations Law § 240 [1-b]; Bast v Rossoff, 91 NY2d 723 [1998].) Under the parental access schedule ordered by the court with respect to L.M.H., petitioner cannot be considered the primary physical custodian. Consequently, petitioner is not entitled to a temporary award of child support.
*372 D. Interim Legal Fees
Plaintiff seeks an interim award of legal fees. Since the petition has been dismissed insofar as it seeks relief as to S.M.H., the application for legal fees can only relate to the issues involving L.M.H. Although Domestic Relations Law § 237 (b) permits a “parent” to seek fees from the other “parent” to litigate a custody matter (Matter of Peterson v Ray, 138 Misc 2d 31 [Sup Ct, Broome County 1988]), plaintiff has failed to provide her attorney’s affirmation which sets out the qualifications of the attorneys, the services rendered and the work expected to be done in the future. Accordingly, there is an insufficient record for an award of legal fees at this time.
Conclusion
In accordance with this decision both the motion and cross motion are granted in part and denied in part.

. The court also reserves its right to redact the parties’ names in any published decision.

. Ironically it is this constitutional right of parents to raise their own children that was heavily relied upon by gay parents to prevent the state or relatives from removing children from them. (Polikoff, The Impact of Troxel v. Granville on Lesbian and Gay Parents, 32 Rutgers LJ 825 [Spring 2001].) In this case, however, the same constitutional rights are being relied upon to exclude a partner’s exercise of rights over children raised in a planned gay family.

. Gilbert A. (supra) actually made a finding of extraordinary circumstances due to psychological harm to the child, but citing Jean Maby H. v Joseph H. (246 AD2d 282 [2d Dept 1998] supra), which expressly relies on the doctrine of equitable estoppel.

. In Perry-Fasano (supra), the First Department rejected the doctrine of equitable estoppel on the unique facts presented therein. It did not otherwise address the viability of the doctrine itself.

. While at the time Alison D. was 'decided, planned gay families had no ability to have a legally recognized two parent household; the law has since changed. Thus same sex adoptions are legally permissible. (Matter of Jacob, *369 supra.) Consequently, in New York State, gay families are no longer solely reliant on doctrines like equitable estoppel or de facto parenthood to establish rights for the nonbiological parent.