OPINION OF THE COURT
Diane Kiesel, J.
*316 Introduction
This case involves a unique set of circumstances in which a husband held himself out to be the father to his wife’s child even though they both knew he was not. For more than four years, petitioner Sean H. acted as father to respondent Leila H.’s child, T. After her birth, he signed an acknowledgment of paternity, gave her his name and both parties told the child and the rest of the world he was her father. There is no dispute that he loves the child and acted as a responsible parent to her. Now that the petitioner and respondent are estranged and the biological father has returned to the respondent’s life, the overarching legal issues presented here are: (1) who is T.’s legal father?, and (2) who has a legal right to pursue visitation with her?
Background
The petitioner seeks visitation with T, the biological child of the respondent. The petitioner and respondent married sometime after the child’s birth. The child was born on November 17, 1997 and nearly two years later the petitioner executed an acknowledgment of paternity and had his name added to the child’s birth certificate. For several years the couple held him out to be her biological father even though they knew he was not. The petitioner and respondent began having marital problems and Gary G., the child’s biological father, at some point apparently came back into the respondent’s life. Mr. G. now seeks an order of filiation and the respondent seeks to vacate the acknowledgment of paternity, claiming her signature on it was forged. Mr. G. and Ms. H. filed their respective petitions simultaneously on March 20, 2003. In addition, the respondent is pursuing a family offense proceeding against her estranged husband alleging that on December 9, 2003 he verbally harassed her over the phone. A criminal case based on allegations made by Ms. H. against her estranged husband is also pending before this court.
A hearing was commenced with respect to Ms. H.’s petition to vacate the acknowledgment of paternity on the grounds of fraud.[1] During the hearing, however, and after the biological father filed his paternity petition, the parties conceded that Mr. G. is T.’s biological father.
*317 Independent DNA testing of Mr. G. confirmed his paternity. This evidence obviates the need for the court to continue taking testimony with respect to the allegations of fraud because Family Court Act § 516-a (b), the statute governing acknowledgments of paternity, specifically states that the court “shall” vacate an acknowledgment if it finds the alleged father, here, Mr. H., is in fact not the biological father. To ask the court to continue hearing testimony on the allegations of fraud — as the petitioner and the law guardian do in their briefs — is in contravention of the plain language of Family Court Act § 516-a (b). It is also asking this court to ignore indisputable scientific evidence and the parties’ own admissions. The court will do neither. Accordingly, the acknowledgment of paternity is vacated and Mr. G. will be issued an order of filiation.
The issue that remains is whether the petitioner, as a biological stranger, has standing to maintain his visitation petition. The court determines he does not.
Discussion
New York State recognizes three categories of persons who may seek custody or visitation with children: parents, siblings and grandparents. (Domestic Relations Law §§ 70, 71, 72, 240; Perry-Rogers v Fasano, 276 AD2d 67, 74 [1st Dept 2000].) The Court of Appeals has made it unequivocally clear that biological or legal strangers to a child have no standing under these statutes to pursue custody or visitation. (Matter of Alison D. v *318 Virginia M., 77 NY2d 651 [1991]; Matter of Ronald FF. v Cindy GG., 70 NY2d 141 [1987].)
In Alison D. (supra), the Court of Appeals declined to expand the definition of parent under New York’s applicable statutes to include nonparents. The case involved a domestic partner who, like the petitioner herein, had acted as a parent and been treated as one to the subject child. The Court held:
“Section 70 gives parents the right to bring proceedings to ensure their proper exercise of their care, custody and control . . . We decline petitioner’s invitation to read the term parent in section 70 to include categories of nonparents who have developed a relationship with a child or who have had prior relationships with a child’s parents and who wish to continue visitation with the child.” (Alison D., supra at 657.)
The United States Supreme Court, after Alison D., addressed the issue of standing and biological strangers in Troxel v Granville (530 US 57 [2000]). The Court held that a Washington State statute, which gave any person the right to petition for visitation, could not be relied upon to support an order of visitation with grandparents over the objections of a fit biological mother. (Matter of C.M. v C.H., 6 Misc 3d 361, 366 [2004], citing Troxel, supra.) The Supreme Court determined that the statute, as applied, violated the mother’s fundamental constitutional right to make decisions concerning the raising of her own children. A parent’s interest in the care, custody and control of children was viewed by the Court as a liberty interest protected under the 14th Amendment to the United States Constitution. “Troxel (supra) strongly supports, from a constitutional perspective, the Court of Appeals’ narrow definition of ‘parents’ for purposes of standing in custody cases.” (Id.)
Extraordinary Circumstances
The decision in Alison D. did not obliterate the doctrine of extraordinary circumstances, which is recognized by New York courts and allows a third party to assert rights over a child without the consent of the child’s biological parents. (Id.; Matter of Bennett v Jeffreys, 40 NY2d 543 [1976].) Following a preliminary finding of extraordinary circumstances, the court may proceed to determine an underlying custody or visitation petition using the “best interest” standard. (Bennett, supra at 548.) Extraordinary circumstances are, however, *319 construed narrowly. The State may not deprive a parent of the custody of a child absent “surrender, abandonment, persisting neglect, unfitness or other like extraordinary circumstances.” (Matter of Michael G.B. v Angela L.B., 219 AD2d 289, 291 [4th Dept 1996], citing Bennett, supra at 544.) There are no allegations before the court that rise to the level of extraordinary circumstances in this case.
Equitable Estoppel
Petitioner asserts that the legal doctrine of equitable estoppel prohibits the respondent from disclaiming petitioner’s parenthood of T. The doctrine of equitable estoppel is imposed by law in the interest of fairness to prevent the enforcement of rights which would work a fraud or injustice upon the person against whom enforcement is sought. (Jean Maby H. v Joseph H., 246 AD2d 282, 285 [2d Dept 1998].)
Prior to the decision of Alison D., the doctrine was commonly invoked to prevent a biological parent from denying visitation to a legal stranger in cases where the biological parent actively nurtured and encouraged a parent-child relationship. (Matter of C.M., supra at 368.) Petitioner argues that, even in the aftermath of Alison D., this court should embrace the principle of equitable estoppel as a justifiable basis to provide him with visitation rights even though he is otherwise a legal stranger to T. He is, in essence, asking the court to ignore the Court of Appeals and apply the doctrine of equitable estoppel to confer standing on him.
Presently, three of New York’s four Appellate Division departments have considered whether the doctrine of equitable estoppel still exists to establish standing rights for a nonparent in custody and visitation cases after Alison D[2] (Id.) They have held that, after Alison D., the doctrine of equitable estoppel no *320 longer exists to confer standing on legal and biological strangers. (Matter of Jams C. v Christine T., 294 AD2d 496 [2d Dept 2002]; Matter of Multari v Sorrell, 287 AD2d 764 [3d Dept 2001]; Matter of Lynda A.H. v Diane T.O., 243 AD2d 24 [4th Dept 1998].)
There is no First Department ruling directly on point with the issue raised by this case.*[3] The legal doctrine of stare decisis, however, requires this court to follow the precedents on point and established by the Appellate Division departments for any of the other three departments. (Matter of C.M., supra at 369.) The current law among the Second, Third and Fourth Departments is in accord with the Court of Appeals ruling in Alison D. Simply put, the doctrine of equitable estoppel may not be used to confer standing on legal strangers seeking custody or visitation. While the court does appreciate that the holdings of the Appellate Division departments are controversial, the “Legislature or higher courts than this one” must make “[c]hanges, if any, to the existing law.” (Id.)
Accordingly, the petition for visitation is dismissed. The acknowledgment of paternity is vacated. Mr. G.’s petition for paternity is granted and the court will issue an order of filiation. The respondent’s family offense petition is the only Family Court petition which awaits disposition.

. There are two statutes, Social Services Law § 111-k and Public Health Law § 4135-b, which set forth the procedures for the voluntary execution of an acknowledgment of paternity. The statute which is relevant here is the Public Health Law.
*317 Public Health Law § 4135-b was amended shortly before T.’s birth. The amendment became effective on November 11,1997. The amendment changed, inter aha, the time period within which a signatory could seek to rescind the acknowledgment. Prior to the amendment, signatories had one year from the signing to bring a motion to be relieved from the legal effects of the acknowledgment. Under the amended law, as it existed when the subject acknowledgment was signed, the parties had only 60 days in which to seek recision from the earlier of either (a) the date of the signing of the acknowledgment or (b) the date of the commencement of a judicial or administrative proceeding relating to the subject child in which either signatory is a party. Here, the acknowledgment was executed on June 28, 1999 and the first of the subject judicial proceedings relating to T. was filed on November 22, 2002. Accordingly, the parties had 60 days from June 28, 1999 to seek recision, not one year, as counsel, with the exception of the law guardian, have argued.
Under the amended law, either party may, however, challenge the acknowledgment in court after the 60-day period on the basis of fraud, duress, or material mistake. In support of her petition to vacate the acknowledgment brought pursuant to Family Court Act § 516-a, the respondent alleges fraud, maintaining that her signature was forged on the acknowledgment of paternity and thus her petition is not time-barred.

. In Perry-Rogers v Fasano (supra), the First Department considered but rejected the doctrine of equitable estoppel on the unique and disturbing facts presented therein. A mix-up at a fertility clinic resulted in Mrs. Fasano being implanted with embryos containing her husband’s genetic material and embryos containing the genetic material made up entirely of that of Mr. and Mrs. Rogers. Although all parties knew about the error a month after the implantation, Mrs. Fasano bore a set of twin boys after a full-term pregnancy. After the Rogerses brought a legal action, the Fasanos agreed to relinquish custody of the Rogerses’ biological child, but only upon the execution of a written agreement entitling them to future visits. Only two brief visits ever took place and the Rogerses then started another legal proceeding seeking sole legal custody of their child. The court issued an order granting them that relief and the Fasanos sought to vacate that order on the grounds the Rogerses had failed to inform the court of the prior visitation agreement. The *320 court determined that, despite the tragic circumstances, there was no basis for applying the doctrine of equitable estoppel. The Fasanos could not be permitted to act in such a way as to create a bond with the Rogerses’ child and then rely upon that bond to assert rights they otherwise would not be entitled to.

. In Matter of C.M., the Honorable Judith J. Gische addresses the issue and examines the representative cases in each department. “Every department has considered the issue except for the First Department,” she writes. (Id. at 368.) And, while the courts that have addressed the issue have denied standing to biological strangers to pursue visiting rights, Justice Gische acknowledges, “[t]hese holdings, however, are not without some controversy.” (Id. at 369.) She notes that Multari (supra) was decided with only a plurality of three Justices in the Third Department and that Jean Maby H. (supra) is inconsistent with subsequent Second Department cases denying standing. (Id.)